[Cite as *Santomauro v. SUMSS Property Mgt., L.L.C.*, 2019-Ohio-4335.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

MARSHA SANTOMAURO, et al.

     Appellees

     v.

SUMSS PROPERTY MANAGEMENT, LLC

     Appellant

C.A. Nos.     29032
                 29217

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2014-04-1498

DECISION AND JOURNAL ENTRY

Dated: October 23, 2019

---

SCHAFER, Judge.

**{¶1}** Appellant-Defendant, SUMSS Property Management, LLC ("SUMSS"), appeals from the March 28, 2018 journal entry and April 18, 2018 order of the Summit County Court of Common Pleas. For the reasons that follow, this Court affirms in part and reverses in part.

I.

**{¶2}** This matter stems from a dispute among six siblings regarding the management of a family real estate and property management business, SUMSS, formed by their father, Anthony Santomauro, in 2004. Following their father's passing in 2014, each of the following siblings was a member with a one-sixth interests in the business: Marsha Santomauro, Lisa Madden, Brenda Elaine Loss, Andrea Renee Cowan, Craig Santomauro, and Christopher Santomauro. Appellees-Plaintiffs, Marsha and Lisa, commenced this action on April 4, 2014, as members of SUMSS seeking judicial dissolution of the company. Marsha and Lisa alleged, inter alia, that Christopher, as manager of SUMSS, had mismanaged the company and breached his fiduciary

duties, and alleged that such conduct made it impracticable to carry on the business of SUMSS. Marsha and Lisa's one-count complaint named SUMSS as the only defendant, and they did not assert any causes of actions against the other siblings individually.

{¶3} SUMSS answered the complaint and litigation ensued. On September 7, 2016, SUMSS filed a counterclaim against Lisa. In the counterclaim, SUMSS alleged that "Lisa, either directly or indirectly through her son, Blake Madden," formed a limited liability company under the name Urban Imperial Building and Rental, LLC ("Urban Imperial"). SUMSS alleged that Lisa, as chief operating officer and general manager of Urban Imperial, engaged in direct and unfair competition with SUMSS, breached fiduciary duties to SUMSS, and unlawfully used SUMSS's trade name "Urban Rental" in operating Urban Imperial to confuse the public and usurp SUMSS's good will.

{¶4} The litigation carried on to the trial date of December 4, 2017. Rather than proceed to trial, the parties engaged in settlement discussions spanning over the course of three days. The settlement discussions culminated with the parties' announcement on December 6, 2017, that they reached an agreement to resolve the case. On December 6, 2017, SUMSS's attorney, Mr. Soles, entered the terms of the settlement agreement on the record in open court in the presence of the judge assigned to hear this matter. The parties—all present and represented by counsel—confirmed their acquiescence to the stated terms of the settlement agreement and represented to the court that the matter was settled. The parties indicated that Mr. Soles would draft "something" regarding the mutual releases and present the trial judge with a proposed judgment entry to mark the case settled and dismissed pursuant to the terms of the agreement read into the record.

{¶5} Then, on December 22, 2017, SUMSS filed a motion to return the matter to the active docket, which was, essentially, a motion to set aside the settlement agreement. In the motion, SUMSS disputed the existence of an enforceable settlement agreement, contending that there was no meeting of the minds as to all relevant terms and asserting defenses to the enforceability of the agreement. Marsha and Lisa each filed a brief in opposition to SUMSS's motion, to which SUMSS filed a reply. The trial court issued a journal entry on January 16, 2018, ruling on SUMSS's motion; the court concluded that SUMSS was not entitled to an evidentiary hearing on its motion, denied the request to return the matter to the active docket, and found that parties entered into an enforceable settlement agreement. The trial court also ordered Marsha and Lisa to submit "a draft of a final judgment entry incorporating the terms of the settlement agreement as entered into at the hearing of December 6, 2017[.]"

{¶6} SUMSS filed objections to plaintiffs' proposed final order on January 26, 2018, and filed renewed objections on February 6, 2018. However, on February 13, 2018, the trial court issued an order reconsidering its prior decision and setting an evidentiary hearing to determine whether the parties had reached a settlement agreement. One day prior to the March 13, 2018 evidentiary hearing, SUMSS filed a supplemental motion to return the matter to the active docket.

{¶7} At the evidentiary hearing, SUMSS presented the testimony of its managing member, Christopher, and the testimony of a physician who had treated Christopher for bronchitis in December of 2017. Following the hearing, the trial court took the matter under advisement and then issued a journal entry on March 28, 2018, ruling on SUMSS's motion to return the matter to the active docket. In its entry, the trial court found "that there was an enforceable settlement agreement entered by the parties to this lawsuit on December 6, 2017[,]"

and further found that "[Mr.] Soles, on behalf of his client, [SUMSS] had apparent authority to enter into the settlement agreement." The trial court also found "that the settlement agreement was certain in its terms and that there was a meeting of the minds on all essential elements to the settlement agreement." Following the trial court's discussion of the terms of the settlement agreement, and the trial court's decision as to which of those terms were essential to the settlement agreement, the court again ordered counsel for Marsha and Lisa to submit "a draft of a final judgment entry incorporating the essential terms of the settlement agreement as set forth above * * *" noting that the "judgment entry should also retain jurisdiction by [the trial court] for the sole purpose of enforcing the settlement as agreed to by the parties on December 6, 2017."

{¶8}    On April 10, 2018, SUMSS filed an objection and opposition to a proposed final order submitted by Lisa's attorney. Over SUMSS's objection, the trial court entered an order on April 18, 2018, reiterating its denial of SUMSS's motion to return the matter to the active docket and finding that the parties entered into a valid and enforceable settlement agreement on December 6, 2017. The April 18, 2018 entry purported to memorialize the terms of the settlement agreement as follows:

> 1) Titles to the 17 real estate properties, all of which are accurately identified in the Transcript made on December 6, 2017, to-wit, 307 Broad, 310/316 Broad, 330 Broad, 1940 3rd Street, 1941 4th Street, 1937 4th Street, 1523 Broad Street, 2032 3rd Street, 2035 Bird, 528 Stow, 2250 4th Street, 2026 3rd Street, 2431 Northland, 542 Sackett, 346/348 Broad, 1868 2nd Street, and 1880 2nd Street, **shall all be transferred by [SUMSS] by quit claim deed, "as-is"** [as of December 6, 2017] **to [Marsha and Lisa] or to [their] designee(s) forthwith**.
>
> 2) Leases incident to each of the 17 properties described above and in the December 6, 2017 transcript shall be transferred to [Marsha and Lisa], or to their designated LLC, by [SUMSS] forthwith and [SUMSS] shall further provide to [Marsha and Lisa] or their designee(s), all records reflecting lease payments made from January 1, 2018 for each of the 17 properties described above through April 1, 2018, including all amounts actually paid for each unit, the identity (identities) of the tenant/tenants making the payments and the dates on which the payments

were made. These documents shall be provided by [SUMSS] to [Marsha and Lisa], or their designee(s) **forthwith**.

3) All security deposits pertaining to the 17 properties described by street addresses above and in the December 6, 2017 transcript shall be transferred by [SUMSS] to [Marsha and Lisa] or their designee(s) no later than April 5, 2018.

4) All January, February, March and April, 2018 rental payments made incident to the 17 properties described herein and in the December 6, 2017 transcript shall be transferred by [SUMSS] to [Marsha and Lisa] or their designee(s) **forthwith**.

5) [Marsha and Lisa] shall transfer their membership units in [SUMSS] to [SUMSS] **forthwith**;

(Emphasis sic.) SUMSS timely appealed from the April 18, 2018 order, presenting four assignments of error for our review.

{¶9} On May 16, 2018, Lisa filed a motion in the trial court seeking attorney fees from SUMSS pursuant to R.C. 2323.51. The motion was filed while SUMSS's appeal from the trial court's April 18, 2018 order was pending in this Court. This Court granted Lisa's motion for limited remand and remanded the matter to the trial court for the limited purpose of ruling on Lisa's motion for attorney fees. The trial court issued its ruling on July 23, 2018, denying the motion for attorney fees without a hearing. Lisa moved to consolidate the appeals. Initially, we denied the motion. However, upon further consideration we now consolidate the appeals for the purpose of this decision.

{¶10} For ease of analysis, we reorder and consolidate certain assignments of error.

II.

### SUMSS's Assignment of Error II

**The trial court erred in holding that the settlement agreement was enforceable when SUMSS's managing member lacked the authority or capacity to enter into the agreement and was operating under duress.**

{¶11} In its second assignment of error, SUMSS contends that the settlement agreement was unenforceable because Christopher lacked the authority to transfer SUMSS's properties. SUMSS also argues that Christopher lacked the capacity to enter into the settlement agreement due to illness, and that the settlement agreement is unenforceable due to duress.

{¶12} The standard of review applicable to a trial court's decision as to the enforceability of a settlement agreement depends on the question presented on appeal. *Technical Constr. Specialties, Inc. v. New Era Builders, Inc.*, 9th Dist. Summit No. 25776, 2012-Ohio-1328, ¶ 18. This Court will not overturn a trial court's findings on an evidentiary question if there was sufficient evidence to support such a finding. *Id.* citing *Chirchiglia v. Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 679 (7th Dist.2000). However, if the dispute is a question of law, this Court "must review the decision de novo to determine whether the trial court's decision to enforce the settlement agreement is based upon an erroneous standard or a misconstruction of the law." *New Era Builders* at ¶ 18, citing *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502 (1995).

## A. Authority to Transfer SUMSS's Properties

{¶13} While maintaining that a settlement agreement does not exist, SUMSS first argues in its second assignment of error that Christopher lacked the authority to enter into the "purported settlement agreement" that would require SUMSS to transfer seventeen "rental properties along with the leases and security deposits for those properties."

{¶14} During the evidentiary hearing, counsel for SUMSS argued that Christopher lacked authority under R.C. 1705.25. In its ruling, the trial court found that Attorney Soles advised the court that the parties had reached a settlement and proceeded to place the terms of the settlement on the record in the presence of both Christopher and Craig, neither of whom

raised any objections to counsel's authority to agree to the stated terms. Regardless of any issues as to Christopher's authority, the trial court concluded that SUMSS had been represented by counsel and that counsel possessed apparent authority to enter into the settlement agreement. Having found that SUMSS's attorney had authority to agree to the terms of the settlement, the trial court rejected SUMSS's claim that Christopher lacked authority to enter the settlement agreement.

{¶15} On appeal, SUMSS does not directly address the trial court's finding that trial counsel for SUMSS exercised apparent authority to enter the settlement agreement on behalf of his client. Rather, SUMSS contends that R.C. 1705.25 limits the authority of a manager of a limited liability company and prevents the manager from making any agreement that would make it impossible to carry out the ordinary business of the company. SUMSS argues that Christopher, as manager, was statutorily prohibited from entering the agreement because the transfer of seventeen properties would contravene this statute. SUMSS maintains that Christopher lacked authority to transfer the seventeen properties without agreement of SUMSS's other members because doing so would prevent SUMSS from carrying on its ordinary business.

{¶16} Even if SUMSS were to successfully argue that R.C. 1705.25 could, as a matter of law, extinguish counsel's authority under these circumstances, SUMSS has not demonstrated the factual basis upon which it seeks to invoke R.C. 1705.25 as grounds for constraining SUMSS's authority to enter the settlement agreement. SUMSS has not cited to any evidence in the record to establish that the transfer of the seventeen properties or any other term of the agreement would "make it impossible to carry on the ordinary business of the company" as stated in R.C. 1705.25(A)(3)(c). Indeed, a review of the record shows that aside from eliciting testimony from Christopher regarding this issue, SUMSS did not present evidence in support of this argument.

Therefore, we conclude that the trial court did not err by overruling the request to set aside the settlement agreement on this basis.

**B. Christopher's Illness**

{¶17} SUMSS next argues that Christopher was too ill to understand the settlement agreement. Specifically, SUMSS argues that because Christopher was suffering from an illness—bronchitis and/or pneumonia—and because he was "heavily medicated[,]" Christopher did not understand the terms of the purported agreement and did not have the mental capacity to understand the complex settlement agreement. On this basis, SUMSS's argues the settlement is unenforceable because Christopher, as manager, lacked the capacity to enter the agreement.

{¶18} Contractual capacity is an essential element of a contract. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16. A party who enters into a settlement agreement and later claims to have been incompetent to enter into that settlement must demonstrate by clear and convincing evidence that the agreement was executed while he was mentally incompetent. *Bretzfelder v. Bretzfelder*, 9th Dist. Summit No. 23674, 2008-Ohio-2669, ¶ 6, citing *DiPietro v. DiPietro*, 10 Ohio App.3d 44, 46, (10th Dist.1983). To demonstrate a lack of competency, a party must show that his mind was so affected at the time he entered the agreement that he did not possess the ability to comprehend the nature or scope of his act, or to appreciate its effect or consequences. *Miller v. Miller*, 9th Dist. Summit No. 21770, 2004-Ohio-1989, ¶ 16, quoting *Kaltenbach v. Kaltenbach*, 4th Dist. Ross No. 1313, 1987 WL 15494, *2 (Aug. 11, 1987).

{¶19} In its ruling, the trial court found it significant that Christopher participated in the negotiations prior to entering the settlement agreement, but at no time during the proceedings did he raise the issue that he was suffering from any medical condition that might render him incapacitated to make decisions. In fact, as the trial court noted, Christopher did not raise this

issue until sixteen days after the settlement. Considering the evidence SUMSS presented at the hearing, the trial court found that the physician SUMSS called to testify regarding Christopher's condition did not offer any opinion as to Christopher's mental capacity as of December 6, 2017. The trial court concluded that there was no evidence upon which the court could find that the effects of the medicine rendered Christopher incompetent as of that date.

{¶20} On appeal, SUMSS reiterated the arguments raised in the trial court, but failed to point to evidence in the record to substantiate its claim that Christopher's illness or medication affected his mind so severely that he was unable to comprehend the terms of the settlement to which SUMSS agreed. Additionally, our review of the record shows that, aside from Christopher's own testimony that he did not feel well, lacked oxygen, and experienced confusion, SUMSS did not present sufficient evidence to demonstrate that he lacked the mental capacity to authorize SUMSS's attorneys to settle the matter pursuant to those terms. Therefore, we cannot conclude that the trial court erred by rejecting the argument that Christopher's alleged illness prevented him from authorizing SUMSS's attorneys to enter into the settlement agreement on December 6, 2017.

## C. **Duress**

{¶21} In the final argument of this assignment of error, SUMSS contends that the agreement was unenforceable because it was the product of duress. SUMSS argues that, prior to the three-day negotiation period leading up to the December 6, 2017 settlement agreement, Marsha's attorney sent "inappropriate texts" to Andrea Renee, "threatening her with criminal prosecution for her support of SUMSS during the litigation." It is SUMSS's theory that Marsha's attorney did this to "gain an unfair advantage and procure a better settlement position" because he "knew" that Andrea Renee would relay this threat to Christopher. SUMSS asserts

that this caused Christopher to worry about Andrea Renee, and placed him in a state of duress which "motivated him to attend the court dates while ill and attempt to settle the lawsuit." The trial court found that any alleged overreaching or duress directed at Andrea Renee—a non-managing member of SUMSS—rather than Christopher as the managing member would not be relevant as to whether SUMSS had entered into a settlement agreement.

{¶22} "'To avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party.'" *Feathers v. Tasker*, 9th Dist. Summit No. 26318, 2012-Ohio-4917, ¶ 8, quoting *Blodgett v. Blodgett*, 49 Ohio St.3d 243 (1990), syllabus. "Three common elements of duress include (1) the involuntary acceptance of terms by one party, (2) no alternative to acceptance under the circumstances, and (3) coercive acts by the other party gave rise to those circumstances." *Id*. citing *Blodgett* at 246.

{¶23} On appeal, SUMSS has not pointed to any evidence in the record to demonstrate coercive acts that left SUMSS with no alternative under the circumstances but to involuntarily accept Marsha and Lisa's settlement terms. *See Feathers* at ¶ 8. SUMSS's subsequent dissatisfaction with the terms of the settlement agreement does not constitute grounds to set aside the agreement in the absence of evidence that coercion forced SUMSS to accept the terms of the agreement. *See Feathers* ¶ 11-12. The allegedly "inappropriate texts" sent by Marsha's attorney were directed to Andrea Renee; she was neither a party to this litigation in her individual capacity nor a managing member of SUMSS. Even assuming that the substance of these text messages caused concern, personally, for Andrea Renee or Christopher, the record does not support the contention that the messages somehow forced SUMSS to accept the terms of the settlement agreement reached as a result of three days of counseled negotiations between the

parties. In fact, SUMSS contends on appeal that the alleged duress compelled Christopher to participate in negotiations while ill, but does not explain how the text messages actually caused SUMSS to involuntarily accept any settlement terms presented by Marsha. At best, this amounts to a claim that SUMSS entered the agreement under difficult circumstances, which is insufficient to establish duress. *Feathers* at ¶ 8.

**{¶24}** Based on the foregoing, we cannot say that the trial court erred by concluding that there was no apparent nexus between the text messages to Andrea Renee and SUMSS's decision to enter the settlement agreement. Therefore, we conclude that the trial court did not err by denying SUMSS's request to set aside the agreement on the basis of duress.

**{¶25}** We conclude that SUMSS has not shown that the trial court's decision—rejecting SUMSS's arguments that the settlement agreement was unenforceable due to a lack of authority, capacity to enter the agreement, or as a result of duress—was not supported by sufficient evidence. SUMSS's second assignment of error is overruled.

**SUMSS's Assignment of Error I**

**The trial court erred in holding that there was an enforceable settlement agreement between [SUMSS] and [Marsha] and [Lisa] as of December 6, 2017.**

**{¶26}** In its first assignment of error, SUMSS argues that the trial court erred by finding that the terms placed on the record on December 6, 2017, resulted in an enforceable settlement agreement. Within this single assignment of error, SUMSS asserts numerous issues with regard to two distinct contentions: (1) that the settlement agreement was unenforceable because there was no meeting of the minds as to essential terms, and (2) that the settlement agreement is unenforceable under the statute of frauds.

## A. Statute of Frauds

{¶27} Initially, we must address an issue with SUMSS's contention that the settlement agreement is unenforceable under the statute of frauds. SUMSS challenges that, because the "purported oral" settlement agreement involves the transfer of real property, the enforcement of the agreement would violate the statute of frauds. SUMSS asserts that "the trial court erred in determining that the oral settlement agreement was valid when it involved the transfer of real property." Although SUMSS ignores the fact that the trial court's subsequent journal entry would eliminate any issue related to the statute of frauds, *see Michaels v. Michaels*, 9th Dist. Medina No. 09CA0047-M, 2010-Ohio-963, ¶ 15, our review of the record reveals that SUMSS never raised the issue to the trial court. "Arguments that were not raised in the trial court cannot be raised for the first time on appeal." *JPMorgan Chase Bank, Natl. Assn. v. Burden*, 9th Dist. Summit No. 27104, 2014-Ohio-2746, ¶ 12. Generally, a reviewing court does "not consider questions not presented to the court whose judgment is sought to be reversed.'" *Carnegie Cos., Inc. v. Summit Properties, Inc.*, 9th Dist. Summit No. 25622, 2012-Ohio-1324, ¶ 8, quoting *Goldberg v. Indus. Com'n of Ohio*, 131 Ohio St. 399 (1936), paragraph four of the syllabus. Because SUMSS raised this statute of frauds argument for the first time on appeal, this Court declines to consider it. *See Klever v. City of Stow*, 13 Ohio App.3d 1, 5 (9th Dist.1983).

## B. Meeting of the Minds as to Essential Terms

{¶28} On appeal, SUMSS contends that the trial court erred by determining that a settlement agreement exists, because there was not a sufficient meeting of the minds as to the settlement terms read into the record to create an enforceable settlement agreement. SUMSS raises numerous issues on this point—some of which were presented to the trial court through

SUMSS's motion to return the case to the active docket and objections to proposed orders, and some of which appear to be raised for the first time on appeal.

{¶29} Generally, where parties voluntarily enter into an oral settlement agreement in the presence of the court, the agreement constitutes a binding contract and a trial court may sign an entry reflecting the settlement agreement in the absence of a motion to set the agreement aside. *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36 (1972), paragraphs one and two of the syllabus. In a case such as this, where "the terms of a settlement agreement were read into the record, but the settlement agreement was not reduced to judgment by the trial court and a dispute subsequently arises as to the terms of the agreement, 'the trial judge should [ ] conduct [ ] an evidentiary hearing to resolve the parties' dispute about the existence of an agreement or the meaning of its terms as read into the record at the hearing, before reducing the matter to judgment.'" *City of Cuyahoga Falls v. Wells*, 9th Dist. Summit No. 19959, 2001 WL 81260, *2, quoting *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 377 (1997). When a party disputes "whether the evidence shows that a settlement agreement exists, this Court will not reverse the trial court's decision so long as its finding is supported by sufficient evidence in the record." *Brown v. Dillinger*, 9th Dist. Medina No. 05CA0040-M, 2006-Ohio-1307, ¶ 7.

{¶30} Although a settlement agreement memorialized in writing is preferable, "an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." *Kostelnik*, 2002-Ohio-2985 at ¶ 15. "[T]he terms of the agreement must be reasonably certain and clear[,]" because

> [a] court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think that they have made a contract. They must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are. Vagueness of

14

expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract.

*Rulli* at 376 , quoting 1 Corbin on Contracts (Rev. Ed.1993) 525, Section 4.1.  However, it is axiomatic that "[a]ll agreements have some degree of indefiniteness and some degree of uncertainty." *Kostelnik* at ¶ 17.

**{¶31}** SUMSS lists a variety of issues in support of its contention that there was no meeting of the minds.  Specifically, SUMSS contends that the settlement lacked sufficient details and that the agreement was "complicated and several terms were undecided" because: (1) it was unclear whether the seventeen properties would be transferred to plaintiffs personally or to their designee; (2) the parties did not confirm whether it was possible to transfer all seventeen properties in the manner indicated in the agreement; (3) the parties did not specify details as to when, and to whom, the security deposit and rents would be paid or who would bear responsibility for the properties prior to transfer; (4) the agreement lacked details regarding the description of the estate claims Marsha and Lisa agreed to waive, and did not specify "which claims were to be assigned to which party[;]" (5) the parties included "additional terms" at the last minute by including a provision for mutual releases, altering the identity of the transferee of the properties from Marsha and Lisa to an unnamed entity, and raising an issue regarding family cemetery plots; and (6) counsel for Marsha and Lisa subsequently inquired as to whether the property transfer would include an adjacent lot.  Additionally, SUMSS argues that the "parties never reached an enforceable agreement because there was an intent to reduce the agreement to writing" and because "there was no meeting of the minds to bind non-parties."

*Complicated and Undecided Terms*

**{¶32}** While arguing that certain terms are complicated, undecided, or unclear, SUMSS does not point to any terms of the settlement agreement that are actually disputed by the parties. Instead, SUMSS claims that the settlement agreement was "anything but [] simple" and that it failed to include sufficient detail.

**{¶33}** "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik*, 2002-Ohio-2985 at ¶ 16. "A dispute over the meaning of a term does not constitute an absence of a material term that could defeat the enforceability of the contract." *Allen v. Bennett*, 9th Dist. Summit Nos. 23570, 23573, and 23576, 2007-Ohio-5411, ¶ 14. In the event that incidental terms or details are not concluded in the agreement, they can be resolved later—judicially or by agreement—but their omission does not render the agreement unenforceable. *See Murra v. Farrauto*, 10th Dist. Franklin No. 16AP-347, 2017-Ohio-842, ¶ 16. Whether a meeting of the minds has occurred as to the essential terms of a contract is a question of fact to be determined from all the relevant facts and circumstances. *Aber v. Vilamoura*, 184 Ohio App.3d 658, 2009-Ohio-3364, ¶ 10 (9th Dist).

**{¶34}** SUMSS has not identified any details of the parties' agreement, the omission of which might render the settlement agreement unenforceable. Otherwise put, the issues raised by SUMSS involve terms and details that, conceivably, could have been included in the settlement. However, SUMSS has not demonstrated that these additional details constitute essential or material terms, as opposed to being incidental or collateral matters that would not defeat the formation or enforceability of a contract. *See Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167, 169 (8th Dist.1983), quoting Restatement of the Law 2d, Contracts, Section 33, Comment a

(1981) ("Where the parties have intended to conclude a bargain, uncertainty as to incidental or collateral matters is seldom fatal to the existence of the contract.")

{¶35} SUMSS asserts that certain terms were added or discussed during "the last minute" of settlement negotiations. The mere fact that these issues were discussed or included near the end of the settlement hearing does not substantiate SUMSS's contention that there was no meeting of the minds as to the material terms of the settlement agreement. Likewise, the fact that Marsha's attorney subsequently inquired as to whether an adjacent parcel would be included in the term of the agreement describing the transfer of real property does not mean that the term was unclear or disputed, let alone establish that there was no meeting of the minds.

*Written Agreement*

{¶36} SUMSS next argues that the settlement terms read into the record cannot constitute an enforceable agreement because "the parties intended to formalize the agreement in writing," "did not intend to be bound by the oral agreement[,]" and instead "contemplated the future action of drafting an agreed order for the judge to sign." In support of this contention SUMSS notes the parties' stated intention to execute mutual releases, mentions a term of the agreement that anticipated the transfer of the properties would occur after the signing of the settlement agreement, and again references the statute of frauds.

{¶37} Once the parties have assented to the terms of a settlement, the settlement agreement exists such that it cannot be repudiated by either party, "'and the court has the authority to sign a journal entry reflecting the agreement and to enforce the settlement.'" *Feathers*, 2012-Ohio-4917 at ¶ 7, quoting *Haas v. Bauer*, 156 Ohio App.3d 26, 2004-Ohio-437, ¶ 16 (9th Dist.). "'The mere fact that parties who have reached a verbal agreement also have agreed to reduce their contract to writing does not prevent the agreement from being a contract if

the writing is not made.'" *PNC Mtge. v. Guenther*, 2d Dist. Montgomery No. 25385, 2013-Ohio-3044, ¶ 15, quoting *Union Sav. Bank v. White Family Cos., Inc.*, 183 Ohio App.3d 174, 2009-Ohio-2075, ¶ 26 (2d Dist.). "It is only where the parties intend that there will be no contract until the agreement is fully reduced to writing and executed that no settlement exists unless the final, written settlement agreement is signed by all of the parties." *Rayco Mfg., Inc. v. Murphy, Rogers, Sloss & Gambel*, 8th Dist. Cuyahoga No. 106714, 2019-Ohio-3756, ¶ 69, citing *Guenther*.

{¶38} Even assuming that the record supports SUMSS's claim that the parties intended to execute a written settlement agreement, the fact that the settlement was not reduced to a writing would not negate the validity of the settlement or divest the trial court of the authority to sign a journal entry reflecting the parties' agreement. Regardless of any intent the parties may have had to reduce their settlement agreement to writing or to execute documents pursuant to their agreement, SUMSS did not present any evidence to establish that the parties did not intend for the settlement agreement to exist until it was reduced to a writing signed by all parties. Whether the parties intended to be bound by the settlement agreement is a question to be resolved by the trier of fact. *Oglebay Norton Co. v. Armco, Inc.*, 52 Ohio St.3d 232, 235 (1990). The record contains sufficient evidence to support the trial court's conclusion that the parties intended to be bound by the agreement. *See id*.

*Binding Non-parties*

{¶39} Finally, SUMSS argues that there was no meeting of the minds to bind numerous non-parties. SUMSS argues that "the settlement agreement purported to bind numerous non-parties who did not participate in the settlement negotiations" or give consent to be bound by the agreement. First, SUMSS asserts an issue as to a term regarding waiver of estate claims that

SUMSS believes "likely referred to Chris, Craig, and [Andrea] Renee." Second, SUMSS argues that the agreement required Blake Madden, as a non-party to the litigation, to take certain actions regarding his company's website.

{¶40} The transcript of the December 6, 2017 settlement agreement indicates that Marsha and Lisa would agree to waive "any entitlement to any distribution in [their late father's] estate," and to assign their interests to "SUMSS and/or to Chris, [Andrea] Renee, and Craig." Ostensibly, this term places an obligation on Marsha and Lisa, but it does not purport to bind a non-party as SUMSS contends. Additionally, counsel for SUMSS stated on the record that "Tim Madden, Blake Madden, and Trisha Madden" would agree to release all claims related to the probate case. SUMSS did not argue or point to any evidence to support the claim that these non-parties did not consent to be bound by the agreement. Even assuming these non-parties did not consent to be bound by the agreement, the import of this particular term is unclear in the context of the settlement agreement. Accordingly, we conclude that SUMSS's arguments regarding these non-parties lack merit.

{¶41} SUMSS also raised an issue as to the terms of the settlement requiring the removal of certain language from the website of Urban Imperial. Urban Imperial is the subject of SUMSS's counterclaim against Lisa, wherein SUMSS alleges that Lisa, along with her son, Blake, formed Urban Imperial by unlawfully using a trade name and unfairly competing with SUMSS. The transcript of the settlement agreement does reflect that the parties agreed to terms involving Urban Imperial. However, the transcript merely references Blake using the name Urban Imperial for the company, and reflects that Urban Imperial would be permitted to keep its name but would refrain from using a slogan and remove untruthful statements and information on the website. The record does not support SUMSS's claim that the settlement agreement binds

Blake, as non-party to the litigation, to take any action in furtherance of the settlement agreement. Therefore, we conclude that SUMSS has not demonstrated how references to non-parties indicate a lack of meeting of the minds as to a material term of the settlement agreement.

**{¶42}** SUMSS's first assignment of error is overruled.

<u>**SUMSS's Assignment of Error III**</u>

**The trial court erred in altering the terms of the settlement agreement.**

<u>**SUMSS's Assignment of Error IV**</u>

**The trial court abused its discretion by adopting an additional disputed settlement term proposed by [Marsha and Lisa] without first holding a hearing.**

**{¶43}** In SUMSS's third and fourth assignments of error, SUMSS argues that the trial court erred when it altered terms and adopted a disputed term in its entry reflecting the settlement agreement. We agree.

**{¶44}** SUMSS asserts that, following the March 13, 2018 evidentiary hearing, "the trial court reduced the agreement to only a few 'essential' terms," and improperly deemed other terms of the settlement agreement to be nonessential terms and omitted them from the journal entry. Additionally, SUMSS argues, the trial court added a provision requiring SUMSS to transfer certain rent payments to Marsha and Lisa despite the fact that the parties never negotiated or agreed to include such a term in their settlement. In essence, SUMSS contends, "the trial court amended the settlement agreement to omit terms favoring SUMSS and unilaterally added significant terms favoring [Marsha and Lisa], in order to reach what it thought was an equitable result."

**{¶45}** When parties reach a settlement agreement in open court and preserve it by reading it into the record, the trial court may approve a journal entry that *accurately reflects* the

terms of the agreement and adopt the agreement as the court's judgment. *Bolen v. Young*, 8 Ohio App.3d 36, 37 (10th Dist.1982); *see Spercel*, 31 Ohio St.2d 36, at paragraph two of the syllabus. In resolving any disputes as to the terms of the agreement, "the trial judge may not adopt the terms of the agreement as he recalls and understands them in the form of a judgment entry." *Bolen* at ¶ 37. If the terms of an agreement are "clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations; instead, the court must give effect to the agreement's express terms." *Lorain Cty. Aud. v. Ohio Unemp. Comp. Rev. Comm.*, 113 Ohio St.3d 124, 2007-Ohio-1247, ¶ 34. It is reversible error for a trial court to adopt a judgment entry that fails to accurately reflect the entire settlement agreement. *Schmid v. Rutter*, 9th Dist. Wayne No. 2505, 1989 WL 157218, *2.

{¶46} In its March 28, 2018 journal entry, the trial court found that an enforceable agreement existed and set forth its findings regarding the essential terms of the agreement. Having overruled SUMSS's motion requesting to set aside the agreement and return the case to the active docket, the trial court proceeded to act on its authority to approve an entry adopting the terms of the settlement. The trial court's April 18, 2018 order incorporated the settlement terms into the court's order dismissing the case Those terms included (1) the transfer of the seventeen properties from SUMSS to Marsha and Lisa, (2) the transfer of the leases for those properties along with all records related to lease payments, (3) security deposits related to the leased properties, (4) all January, February, March, and April rental payments made incident to the seventeen properties, (5) the transfer of Marsha and Lisa's membership interests in SUMSS to SUMSS. SUMSS contends that the trial court erred when it omitted from the entry reflecting settlement several agreed terms, including "probate matters, the release of claims, and the removal of advertising statements[.]"

**{¶47}** We summarize below the terms of the settlement agreement placed into the record on December 6, 2017:

SUMSS will transfer seventeen properties, each identified in the record by address, to Marsha and Lisa, or to a newly created entity they designate.

SUMSS will transfer the seventeen properties by quitclaim deeds, in an as-is condition.

The anticipated date for the transfer of the properties is on or before January 1, 2018.

SUMSS will sign any and all leases, including any security deposits, to Marsha and Lisa within 120 days of the signing of the settlement agreement.

Marsha and Lisa will transfer all membership units to SUMSS and execute any and all documents necessary to effectuate that transfer.

The case pending before the trial court will be dismissed with prejudice.

Regarding the probate of the estate of their late father, Lisa and Marsha agree to execute any forms necessary to waive entitlement to any distribution in the estate and assign their interest to SUMSS and/or Chris, Andrea Renee, and Craig. This "would include" Tim Madden, Blake Madden, and Trisha Madden,

Urban Imperial may continue to use its current name, but agrees to stop using their current slogan and to remove any reference on their website inaccurately claiming that they have been in business since 1954 and any other untrue information.

Marsha would receive certain personal items, including a grandfather clock, glass windows, porcelain vases, and videos of Marsha with her father in Italy.

Lisa would receive some photos of her father.

Each party would pay its own attorney fees, and the court costs would be split between the parties.

Anyone signing a mutual release would get a release from all other parties.

The parties agreed to divide family cemetery plots in a manner permitted by the cemetery's rules and regulations.

Our review of the record reveals that several terms stated on the record are not reflected in the trial court's April 18, 2018 order memorializing the terms of the agreement.

{¶48} SUMSS claims that the reason the trial court amended the settlement agreement is because, in the trial court's view, this was a case of judicial dissolution and SUMSS benefited merely by avoiding dissolution. Indeed, in the transcript of the evidentiary hearing the trial court stated the following:

> Well, here is the situation: What is easily lost sight of in this issue is that this settlement or - - alleged settlement on December 6th was to settle the case in front of this [c]ourt involving the dissolution of the corporation. Anything else, such as probate matters, burial plots, photographs, they may have been talked about, but I don't know why those would be material terms.

{¶49} SUMSS argued that if the trial court deemed certain terms of the agreement immaterial and excluded them as "unenforceable provisions," there may not be a meeting of the minds or a mutual benefit to both sides. In other words, eliminating terms from the agreement would remove some of the bargained-for benefit to SUMSS. In response, the trial court went on to say:

> But here is what [SUMSS] get[s]. If the settlement would go through, 17 lots go to the Plaintiffs and they get out of [SUMSS]. [SUMSS] never has to run the risk of being dissolved.

{¶50} In its March 28, 2019 journal entry holding that the parties entered an enforceable settlement agreement on December 6, 2017, the trial court stated:

> The [c]ourt would note that the main purpose of the settlement was to settle the litigation in front of it which concerned the petition by the Plaintiffs to dissolve [SUMSS] pursuant to provisions of R.C. Chapter 1705. Other matters discussed on December 6, 2017 were, while perhaps subjectively important to the parties, were not essential to that settlement from a legal analysis.
>
> This is important because [SUMSS] argues that there were persons who would be affected by the settlement that were not parties to this litigation. Likewise, [SUMSS] also argues that there were certain issues discussed at the December 6, 2017 hearing that were under the exclusive jurisdiction of the Summit County

Probate Court. Both of those may be true but, in this [c]ourt's view, they were not essential to the settlement agreement. Therefore, this [c]ourt can adopt the settlement agreement as to the transfer of the properties whose addresses were read into the record, the transfer of any security deposits to the Plaintiffs and the transfer of the Plaintiffs' membership units back to [SUMSS].

{¶51} Thus, the trial court determined—despite the parties' negotiations and agreement on the record to include specific terms of the settlement—that certain terms were not "material" or "essential" in that they were related only to settlement, but not directly related to the issues underlying the case. Aside from the trial judge indicating his own interpretation and understanding of the core or essence of the agreement, the precise basis for the trial court's conclusion is unclear. Although the trial court hints at a legal analysis regarding the essential terms of the settlement, there is no legal basis for including or disregarding terms placed on the record as terms of the parties' settlement solely because the court did not consider them to be "essential" terms of the settlement agreement.

{¶52} SUMSS also argues that the trial court erred when it adopted a term—over SUMSS's objection—that Lisa's attorney included in a proposed judgment entry. SUMSS contends that the trial court's April 18, 2019 order altered the parties' settlement agreement by including an additional settlement term requiring SUMSS to transfer rent payments for the seventeen properties.

{¶53} The trial court's April 18, 2018 order stated:

2)     Leases incident to each of the 17 properties described above and in the December 6, 2017 transcript shall be transferred to Plaintiffs, or to their designated LLC, by [SUMSS] **forthwith** and [SUMSS] shall further provide to Plaintiffs or their designee(s), all records reflecting lease payments made from January 1, 2018 for each of the 17 properties described above through April 1, 2018, including all amounts actually paid for each unit, the identity (identities) of the tenant/tenants making the payments and the dates on which the payments were made. These documents shall be provided by [SUMSS] to Plaintiffs, or their designee(s) **forthwith**.

3) All security deposits pertaining to the 17 properties described by street addresses above and in the December 6, 2017 transcript shall be transferred by [SUMSS] to [Marsha and Lisa] or their designee(s) **no later than April 5, 2018**.

4) All January, February, March and April, 2018 **rental payments made incident to the 17 properties** described herein and in the December 6, 2017 transcript shall be transferred by [SUMSS] to [Marsha and Lisa] or their designee(s) **forthwith**.

(Emphasis sic.) SUMSS maintains that the parties never considered, much less agreed, to include this as a term of the settlement.

**{¶54}** The record reflects that the parties anticipated that the date for transfer of the properties would be on or before January 1, 2018. The parties agreed that SUMSS would assign leases to Marsha and Lisa within 120 days of the signing of the settlement agreement. The record does not indicate any agreement for SUMSS to remit four months of rental payments to Marsha and Lisa as of January 2018.

**{¶55}** We conclude that the trial court erred by adopting a journal entry that improperly added terms, and omitted others, contrary to the stated intentions of the parties in reaching an agreement to settle their claims. At a minimum, a settlement agreement must include a meeting of the minds as to all essential terms. *Kostelnik*, 2002-Ohio-2985 at ¶ 16. However, if arguably "less essential" terms are included in the agreement, the trial court cannot disregard the parties' expressed intent to include such terms and remove them from the settlement agreement. "Courts have an obligation to give plain language its ordinary meaning and to refrain from revising the parties' contract. *Rulli*, 79 Ohio St.3d at 380. If the record clearly reflects that the parties intended to include a term in their settlement agreement, the trial court does not have the discretion to adopt a judgment entry that unilaterally excludes or adds terms in a manner that would result in a settlement agreement that is inconsistent with the parties' agreement. *See City of Cuyahoga Falls v. Wells*, 9th Dist. Summit No. 19959, 2001 WL 81260, *3.

{¶56} The trial court's basis for adding and omitting terms of the agreement is not supported by law, and the evidence in the record does not support the trial court's decision. Therefore, this matter is reversed and remanded for the trial court to adopt a journal entry that accurately reflects the parties' settlement agreement as stated on the record on December 6, 2016. We caution, however, that our directive on remand should not be construed so as to limit the trial court's ability to consider any previously unresolved issues stemming from the terms disputed in this assignment of error.

{¶57} SUMSS's third and fourth assignments of error are sustained.

### Lisa's Assignment of Error

**The trial court abused its discretion in denying [Lisa]'s motion for an evidentiary hearing made pursuant to R.C. 2323.51 and thereafter denying [Lisa]'s motion for attorney fees for SUMSS'[s] frivolous misconduct.**

{¶58} In her merit brief on appeal, Lisa argues that the trial court erred when it declined to hold a hearing on her motion for attorney fees and denied the motion. Specifically, Lisa argues that the trial court abused its discretion by refusing to grant a hearing where she incurred unnecessary legal fees because SUMSS moved to vacate the settlement agreement on contrived bases. Lisa asserts that SUMSS made this motion after participating in negotiations—in court and represented by three lawyers—over the course of December 4-6, 2017, and after the terms of the agreement were read into the record in the presence of the trial judge and SUMSS's managing member. We disagree.

{¶59} A court's decision on whether to award sanctions under R.C. 2323.51 will not be reversed on appeal absent an abuse of discretion. *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, ¶ 11. An abuse of discretion involves something more than an error of law or judgment; it requires the appealing party to show that the trial court's decision was

unreasonable, arbitrary, or unconscionable.  *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  When applying the abuse of discretion standard, this Court may not simply substitute its own judgment for that of the trial court.  *Pons v. Ohio State Med. Bd*., 66 Ohio St.3d 619, 621 (1993).

{¶60}  R.C. 2323.51(B)(1) permits a "party adversely affected by frivolous conduct [to] file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal."  A court may make an award pursuant to R.C. 2323.51(B)(1) only after the court conducts a hearing "to determine whether particular conduct was frivolous * * * [and] whether any party was adversely affected by it * * *."  R.C. 2323.51(B)(2)(a)-(c).  However, it is well-settled that "R.C. 2323.51(B)(2) does not mandate a hearing whenever a motion for fees is made, but only that an evidentiary hearing is a necessary precondition to awarding fees."  *Avon Poured Wall, Inc. v. Boarman*, 9th Dist. Lorain No. 04CA008448, 2004-Ohio-4588, ¶ 24.

{¶61}  While acknowledging the overwhelming precedent holding to the contrary, Lisa contends "that the language of R.C. 2323.51 does not seem to leave the decision whether to grant a hearing to the discretion of the [t]rial [c]ourt."  Lisa urges that her motion to dismiss presented a "triable issue" and "arguable basis" for awarding attorney fees and claims, therefore, "an evidentiary hearing should have been permitted * * *."

{¶62}  We conclude that Lisa has not presented any authority to support her claim that the trial court was required to hold an evidentiary hearing prior to denying her motion.  This Court has consistently held "that R.C. 2323.51 requires the trial court to hold a hearing before it can award attorney fees as a sanction for frivolous conduct, *but the same is not required when the trial court declines to award attorney fees*."  (Emphasis added.)  *Sunrise Coop., Inc. v.*

*Joppeck*, 9th Dist. Lorain No. 16CA010984, 2017-Ohio-7654, ¶ 25. Lisa has not established that the trial court abused its discretion when it denied her motion for attorney fees without hearing.

**{¶63}** Lisa's assignment of error is overruled.

## III.

**{¶64}** SUMSS's assignments of error one and two are overruled. SUMSS's third and fourth assignments of error are sustained. Lisa's single assignment of error is overruled. The trial court's April 18, 2019 order is reversed, and this matter is remanded for proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, P. J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

KANI HARVEY HIGHTOWER, Attorney at Law, for Appellant.

LOUISE M. MAZUR, Attorney at Law, for Appellant.

ANASTASIA J. WADE, Attorney at Law, for Appellant.

ROBERT C. MEEKER and COLIN G. MEEKER, Attorneys at Law, for Appellee.

ORVILLE L. REED, III and DAVID HILKERT, Attorneys at Law, for Appellee.