[Cite as *Murphy Elevator Co., Inc. v. 11320 Chester L.L.C.*, 2018-Ohio-1362.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| THE MURPHY ELEVATOR COMPANY, INC., | : | APPEAL NO. C-170251 TRIAL NO. A-1603623 |
| Plaintiff-Appellee, | : | *O P I N I O N.* |
| vs. | : | |
| 11320 CHESTER LLC, d.b.a. SPLASH CINCINNATI WATERPARK, f.k.a. COCO KEY HOTEL AND WATER RESORT, | : | |
| Defendant-Appellant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:   Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  April 11, 2018

*Christopher R. Heekin Co. LLC* and *Christopher R. Heekin*, for Plaintiff-Appellee,

*Repper-Pagan Law, Ltd.*, and *Christopher J. Pagan*, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1} Defendant-appellant 11320 Chester LLC ("Chester") has appealed from the trial court's entry granting judgment in the amount of $13,626.14 to plaintiff-appellee The Murphy Elevator Company ("Murphy") on Murphy's claim for breach of contract.

{¶2} Because the trial court used the wrong measure of damages when calculating the damages owed to Murphy for the remaining months under the second year of the parties' three-year contract, we reverse that portion of the trial court's judgment. The judgment of the trial court is otherwise affirmed.

### Factual and Procedural Background

{¶3} Chester and Murphy entered into a contract for Murphy to perform maintenance services on certain elevators located in a hotel and waterpark owned by Chester. The contract commenced on August 1, 2014, and provided that it would continue for a period of three years.

{¶4} Chester was required to pay Murphy $4,000 per quarter for the first year of the contract. However, if Chester paid for an entire contract year up front, it was only required to pay $15,000 for the year. With respect to the price owed by Chester for the second and third years of the contract, the contract provided that the price "is subject to adjustment at the end of each year in which this agreement is in force. The following formula for adjustment will be used: not more than 3% of the current price."

{¶5} The contract specified the exact services covered and stated that "[n]o work, service or liability, on the part of The Murphy Elevator Company other than that specifically mentioned herein is included or intended as a part of the contract."

The contract further listed the hours and days during which services would be performed, and it provided that Chester would incur an additional charge for covered work performed outside of the specified days and times.

{¶6} Chester paid $15,000 up front for the first year of the contract. On July 1, 2015, Murphy submitted an invoice for the second year of the contract in the amount of $16,371. This amount was a three-percent increase to the price paid during the first year of the contract, plus sales tax. During the first and second years of the contract, Murphy submitted additional invoices to Chester for work performed that was outside the scope of the contract and for work covered under the contract that was performed outside of the contractually provided days and times.

{¶7} After paying for the first year of the contract up front, Chester made only two additional payments to Murphy. It made a payment of $168.13, which corresponded to an invoice for work that had been performed on a day or time not covered under the contract. And it made an additional payment of $8,500 on September 17, 2015.

{¶8} In June of 2016, Murphy sued Chester for breach of contract for Chester's failure to pay the submitted invoices. Murphy sought approximately $22,126 in damages.

{¶9} During a bench trial, Murphy's Vice President of Administration Travis Carlisle testified regarding the unpaid invoices that Murphy had submitted to Chester. He explained that with respect to work that Murphy had performed that was not covered under the contract, Murphy billed Chester the rate it would charge for a technician's regular time, holiday time, or overtime, depending on when the work was performed. And for work covered under the contract but performed

outside of the contractually provided days and times, Carlisle stated that Murphy billed Chester the difference between a technician's regular and overtime rates, as was provided for in the parties' contract.

{¶10} Carlisle explained the circumstances surrounding each invoice that had been submitted, including whether the work had been covered under the contract. He conceded on cross-examination that Chester's payment of $8,500 should be applied to the amount invoiced for the second year of the contract.

{¶11} Carlisle testified that Murphy had stopped performing under the contract in March of 2016 because of Chester's nonpayment. He additionally explained that Murphy generally receives a 33 percent profit margin on this type of service contract.

{¶12} Vijaya Kumar Vemulapalli testified on behalf of Chester that neither he nor anyone else had requested that Murphy perform any services on weekends or during premium, noncovered time. He explained that prior to signing the contract with Murphy, he informed the company that he did not want to pay for services performed on the weekend. Vemulapalli testified that Murphy had told him that despite their standard contract language excluding weekends from coverage, it would not charge him for weekend service calls.

{¶13} The trial court found that the parties' contract covered only the days and times specified in the contract and that Murphy's submitted invoices were valid. It voided the third year of the contract as a matter of equity, and it awarded Murphy $22,126.14 in damages.

{¶14} Chester filed a motion for reconsideration. It argued that the trial court should have credited its payment of $8,500 towards the amount billed for the

second year of the parties' contract, that the trial court should not have charged Chester premium rates for services performed outside the contract, and that Chester should not have been required to pay for the second half of the second year of the contract.

{¶15} The trial court issued a modified judgment crediting Chester for the $8,500 payment and awarding Murphy $13,626.14 in damages.

### Billing Rates

{¶16} In its first assignment of error, Chester argues that the trial court erred in failing to enforce the clear and unambiguous terms of the contract to services performed outside the scope of the contract.

{¶17} Where a contract's terms are clear and unambiguous, interpretation of the contract is a matter of law. *Ruehl v. Air/Pro, Inc.*, 1st Dist. Hamilton Nos. C-040339 and C-040350, 2005-Ohio-1184, ¶ 4. In such instances, this court conducts a de novo review. *Id.* But where the terms of a contract are ambiguous, "the meaning of the words in the contract becomes a question of fact, and the trial court's interpretation will not be overturned on appeal absent a showing that the court abused its discretion." *Kelly Dewatering and Constr. Co. v. R.E. Holland Excavating, Inc.,* 1st Dist. Hamilton No. C-030019, 2003-Ohio-5670, ¶ 21. A contract will be considered ambiguous where "its terms cannot be clearly determined from a reading of the entire contract or if its terms are susceptible to more than one reasonable interpretation." *Id.*

{¶18} Chester first argues that a rate of $90 per hour should govern all charges for work performed outside of the contractually specified dates and times and for work that was not covered under the contract. It relies on the following

provision in the parties' contract: "If you request that the normal and regular examination, adjustments, and/or repairs be made at times other than the regular working hours as set forth above, then you agree to pay the difference between our regular and overtime billing rates." With respect to the difference in rates, the contract contained the following clause: "Rates for the year 2014: The difference between Straight and Overtime will be $90.00 per man hour."

{¶19} For covered services performed outside of the contractually specified dates and times, Murphy initially invoiced Chester at a rate of $90 per hour. But in two invoices in the year 2016, Murphy invoiced Chester at a rate 0f $126 per hour for such services. Carlisle addressed this discrepancy and explained that in 2016, the difference between regular and overtime rates had increased from $90 to $126 per hour.

{¶20} Chester contends that the trial court erred in awarding Murphy judgment calculated at a rate of $126 per hour on these two invoices. But the contract language providing that Chester would owe the difference between a technician's regular and overtime billing rates for this type of work was clear and unambiguous. The contract was equally clear that $90 was the difference between such rates *in the year 2014*. The trial court did not err in relying on Carlisle's testimony and determining both that the difference in rates was $126 per hour in the year 2016 and that Chester was required to pay these two invoices as charged.

{¶21} As to services performed that were not covered under the parties' contract, Murphy invoiced Chester at either a technician's regular rate, holiday rate, or overtime rate, depending on when the services were performed. These rates ranged from $196 per hour to $362 per hour. Chester contends that Murphy could

only have charged a rate of $90 per hour (described as the difference between regular and overtime rates) for services not covered under the contract.

{¶22} The contract clearly and unambiguously provided that only certain services were covered. And while the contract did not specify the exact hourly rate that Chester would be required to pay for services not covered, the only reasonable interpretation of the contract is that Chester would be charged Murphy's standard rate for such services. Chester's argument that Murphy was limited to charging a rate of $90 is meritless. The $90 amount specified in the contract was not an hourly rate otherwise charged by Murphy. Rather, it was the difference between the rates charged for a technician's regular time and overtime. The trial court did not err in relying on Carlisle's undisputed testimony and the submitted invoices to determine the rates that Murphy charged for a technician's regular time, holiday time, and overtime, and in awarding Murphy judgment for services not contractually covered based on those rates.

{¶23} Chester last argues under this assignment of error that the trial court erred in awarding judgment to Murphy on the invoice numbered 101382 because Murphy had failed to establish that Chester had requested the services charged in that invoice during a time not covered under the contract. The record belies this argument. With respect to the invoice numbered 101382, Carlisle testified that the service call had come in at night. He specifically stated, "[i]t certainly came in, in the evening at some point." The trial court did not err in relying on Carlisle's testimony and awarding Murphy the amount sought for overtime work in this invoice.

{¶24} Because the trial court did not err in awarding judgment on services that were performed outside the scope of the contract, we overrule Chester's first assignment of error.

### *Damages for Year Two of the Contract*

{¶25} In its second assignment of error, Chester argues that the trial court erred in awarding a judgment encompassing full payment under the second year of the contract.

{¶26} Murphy invoiced Chester $16,371 for the second year of the contract. The trial court awarded Murphy judgment for this full amount, less Chester's $8,500 payment that Carlisle had conceded should be applied towards payment of the second year contract price.

{¶27} Chester argues that because Murphy had stopped performing on the contract in March of 2016, the trial court erred in awarding Murphy the full amount invoiced for year two of the contract. It contends that Murphy is only entitled to damages on the months that it performed services during that contractual year. While we agree with Chester's argument that the trial court erred in calculating the damages owed to Murphy for its services under year two of the contract, we disagree with Chester's suggested measure of determining the correct amount of damages.

{¶28} An award of damages should put the injured party in the same position it would have been in if there had been no breach. *Evans Landscaping, Inc. v. Grubb*, 1st Dist. Hamilton No. C-090139, 2009-Ohio-6645, ¶ 12. Here, had there been no breach, Murphy would have received the remainder of the amount invoiced on year two of the contract, less its expenses. Murphy therefore was entitled to damages in the amount of the lost profits that it would have received for the

remainder of year two of the contract. *See Andrew v. Power Marketing Direct, Inc.*, 2012-Ohio-4371, 978 N.E.2d 974, ¶ 66 (10th Dist.) (lost profits may be recovered in an action for breach of contract where "(1) profits were within the contemplation of the parties at the time the contract was made; (2) the loss of profits was the probable result of the breach of contract; and (3) the profits are not too remote or speculative.").

{¶29} Carlisle testified that Murphy generally receives a 33 percent profit margin on a service contract. But rather than award Murphy its lost profits encompassing 33 percent of the amount owed by Chester for the remaining months of year two of the contract, the trial court awarded Murphy the gross revenue it would have received for the services covered under year two of the contract. This was in error.

{¶30} We sustain Chester's second assignment of error, and we vacate the portion of the trial court's judgment awarding Murphy full payment on the amount invoiced for year two of the contract. This cause is remanded for the trial court to calculate the lost profits on the remaining months of the second year of the contract and to award Murphy damages in that amount. The judgment of the trial court is otherwise affirmed.

Judgment affirmed in part, reversed in part, and cause remanded.

**MILLER** and **DETERS, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.