[Cite as *Swan v. Villas Condominium Unit Owners Assn.*, 2024-Ohio-2313.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DARYL SWAN, | : | APPEAL NO. C-230517<br>TRIAL NO. A-2101811 |
| GWENDOLYN BOGGS, | | |
| MARY EASON, | : | *O P I N I O N.* |
| CLEOPIES OLINGER, | | |
| DOROTHY WITTE, | : | |
| and | : | |
| HELEN BINFORD | | |
| Plaintiffs-Appellants, | : | |
| vs. | | |
| THE VILLAS CONDOMINIUM UNIT OWNERS' ASSOCIATION, | : | |
| PAUL THYBERG, | : | |
| NANCY THYBERG, | | |
| PATRICK FLOWERS, | : | |
| and | : | |
| DENISE LYNCH, | | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: June 18, 2024

*The Williamson Law Firm LLC, Anisa A. Williamson* and *Jesse Jackson, Jr.*, for Plaintiffs-Appellants,

*BatesCarey LLP, Agelo L. Reppas, Marshall Dennehey* and *Ray C. Freudiger,* for Defendants-Appellees.

**CROUSE, Judge.**

{¶1}　In this appeal, we are asked to determine whether the trial court erred in enforcing a settlement agreement that, while written, was not signed by all parties to the agreement. Because the record does not establish that the parties intended for the binding nature of the agreement to be contingent upon the execution of a formal, signed writing, and because the parties reached a meeting of the minds as to all essential terms of the agreement, we hold that the trial court did not err in enforcing the settlement agreement and we affirm its judgment.

## I. Litigation is Filed and a Settlement is Reached

{¶2}　Plaintiffs-appellants Daryl Swan, Gwendolyn Boggs, Mary Eason, Cleopies Olinger, Dorothy Witte, and Helen Binford (collectively "the unit owners") each own an interest in a condominium unit in The Villas condominium complex. On May 26, 2021, the unit owners filed suit against defendants-appellees The Villas Condominium Unit Owner's Association ("the Villas") and four members of the Villas Board of Directors, namely Paul Thyberg, Nancy Thyberg, Patrick Flowers, and Denise Lynch (collectively "the Board"). The Board governs the Villas.

{¶3}　The complaint generally alleged that a contract existed between the unit owners and the Villas, and that the Villas and the Board breached that contract by failing to maintain complete and accurate books and records of expenses paid for work done on condominium property, failing to allow the unit owners to inspect the books, and failing to maintain common spaces at the Villas, which allowed the property to fall into disrepair. The complaint asserted claims for breach of contract, breach of fiduciary duty, and negligence. It also sought a declaratory judgment that the unit owners are entitled to inspect the Villas' records and that the Villas is required to

3

maintain the property in accordance with the contract between the Villas and the unit owners.

{¶4} The parties attended a settlement conference in September of 2022. They left that conference having reached an agreement to settle the unit owners' claims. The settlement agreement included the Villas' and the Board's agreement to hold meetings three times a year and the time limits and "atmosphere guidelines" governing the meetings, including the unit owners' ability to submit issues to be discussed and the Board's authority to discontinue a meeting if the participants did not behave in a respectful manner.

{¶5} The parties reported to the trial court that a settlement agreement had been reached. The trial court's law clerk emailed counsel for both parties stating, "It is the Court's understanding this case has settled and that the parties are working on a final agreement. I have set this case for final entry on 12/16/22 at 1 PM. No one needs to call or appear on this date. The Court will just be checking for final paperwork. The Court is not vacating the pretrial or jury trial at this time."

{¶6} Donielle S. Willis, an attorney representing the Villas and the Board, put the terms that the parties had agreed upon in a writing titled "Affidavit and Full and Final Release/Covenant not to Sue." She emailed the agreement and a stipulation of dismissal to Darlene Smith, then counsel for the unit owners. Smith responded with proposed changes to the agreement, including the elimination of defense-and-indemnification language concerning related lawsuits filed by future condominium owners against the Villas and the Board. Willis objected to the elimination of that language and the following email exchange between counsel occurred:

4

12/1/22 (9:12 a.m. email from Willis to Smith): Darlene, We have reviewed your comments and there are a few changes we still need on our end. We do not want to get rid of/add language about future owners suing for the same thing. My client obviously wants to make sure no future liability or claims arise from one, two, or however many other units down the road for this exact same thing. We need to keep this language. Let me know if you need to discuss further. My comments are in green and yellow. Thanks[.]

12/1/22 (11:41 a.m. email from Smith to Willis): Hi Donielle: My Clients cannot speak for future owners. This suit was not a class action. It is unreasonable and would put my Clients in a position of liability to have them speak for persons who were not a part of this suit and with whom they were not in privity of contract at the time of this suit. Under what legal theory are your Clients requesting this broad indemnification?

12/1/22 (3:30 p.m. email from Willis to Smith): Darlene, We want to keep this language. I understand your position, and we aren't asking about future individuals per se not suing, but we don't want you going and representing another set of individuals who would ask for the same thing when we are already in agreement to do something that applies to all those individuals. Does this make sense? If not, feel free to call my cell [phone number]. Thanks.

12/6/22 (1:07 p.m. email from Smith to Willis): Hi Donielle: Yes I would like to speak with you to see regarding this. What is your availability for today?

{¶7} It is evident from the emails in the record that counsel eventually discussed the issue on a phone call. After the call, the following email exchange took place:

12/13/22 (11:19 a.m. email from Smith to Willis): Good morning Donielle: With the looming Court deadline of this Friday, I am checking in for an update after our conversation on December 6, 2022, regarding the addition of: "and with which Releasees have substantially complied" to the end of the last full paragraph on Page 3. Please advise.

12/13/22 (12:09 p.m. email from Willis to Smith): Darlene, Yes. My clients are confirming the language and I think I can have to you by end of business tomorrow. Do you think you could get it signed by Friday? If not, my office can ask for a week extension. We want to get everything finalized by the 21st to allow my clients ample time to start scheduling the agreed January meeting. Does this work?

12/13/22 (12:31 p.m. email from Smith to Willis): Thanks Donielle. I will be out of Ohio beginning 12/20/22 through the first week of January. I would love to get the document signed, if not by Friday, certainly by Monday. Therefore, a week's extension would work, giving me time to get it back to you by Monday, [at] the latest.

12/13/22 (12:40 p.m. email from Willis to Smith): Great, thank you. I will do my best to get the release to you by end of tomorrow.

12/14/22 (3:08 p.m. email from Willis to Smith): Darlene, We have a good to go release. I'm attaching a clean copy and a copy that shows where the last edits were made just for your ease of reference. You'll see

6

there were a few other minor edits I made, but they do not affect substance. Once you get this signed by all your clients, please send back to me with the signed dismissal and we will get the dismissal filed. Thanks. Let me know if you have questions.

{**¶8**} After adding Smith's proposed addition to the defense-and-indemnification language, the defense-and-indemnification provision read: "The Undersigned agree to defend and indemnify Releasees if the Undersigned or other unit owners in the community sue Releasees for the same or substantially the same or related claims that have been alleged in this lawsuit and to which the releasees have substantially complied."

{**¶9**} Willis obtained an extension from the trial court to file the agreement and dismissal. After receiving no email response from Smith with a signed agreement and dismissal, Willis sent two follow-up emails. One week later, Smith responded via email that said: "My Clients have decided to voluntarily dismiss the case, without prejudice. I will prepare and file the voluntary dismissal no later than this Friday."

{**¶10**} The Villas and the Board filed a motion to enforce the settlement agreement on December 27, 2022. No response was filed by the unit owners, nor was a voluntary dismissal ever filed. However, on December 30, 2022, counsel for the unit owners filed a motion to withdraw as counsel, stating that an attorney-client relationship was no longer possible.

{**¶11**} The trial court held a hearing on these two pending motions on January 23, 2023. At the hearing, the court first heard and granted counsel for the unit owner's motion to withdraw. It then heard argument from counsel on the motion to enforce the settlement agreement. The court entered an order on January 24, 2023, granting

the motion to enforce, but giving the unit owners ten days to file objections to the order. It further stated that if no objections were filed during the ten-day period, its order granting the motion would stand. The unit owners did not file any objections. Instead, they retained new counsel, who filed an appeal of the order granting the motion to enforce the settlement agreement on February 22, 2023. This court dismissed the appeal after determining that the trial court's order was not final and appealable.

{¶12} On August 22, 2023, approximately five months after the appeal was dismissed, five of the unit owners, seemingly acting pro se, filed affidavits stating that they were not in agreement with the terms contained in the settlement agreement purportedly negotiated on their behalf and that they had not signed any document evidencing their agreement. The unit owners further alleged that they were not represented by counsel at the January 23 hearing and were not properly served with the trial court's order granting the motion to enforce the settlement agreement. The affidavit further requested that a hearing be scheduled for the unit owners to be heard on their "Motions."

{¶13} On August 29, 2023, the trial court issued an "order denying affidavits/motions." The order stated that that the affidavits contained insufficient grounds to set a hearing or otherwise set aside the order granting the motion to enforce the settlement agreement, and it noted that the "motions" were filed nearly seven months after the court's order was issued and five months after the appeal was dismissed. It further stated "the Court finds all matters in this case resolved or otherwise dismissed. This is a final and appealable order and there is no just cause for delay."

8

**{¶14}** On September 4, 2023, the unit owners, by and through counsel, filed a Civ.R. 60(B) motion requesting relief from the trial court's January 2023 order granting the motion to enforce the settlement agreement. The trial court denied the motion, stating that it was moot after the court's final and appealable order issued on August 29, 2023. The unit owners then appealed the August 29 order.

## II. Enforcement of the Settlement Agreement

**{¶15}** In a single assignment of error, the unit owners argue that the trial court erred in enforcing the settlement agreement.

**{¶16}** Settlement agreements are contracts between the parties "to terminate a claim by preventing or ending litigation." *Kinnett v. Corporate Document Solutions, Inc.*, 1st Dist. Hamilton No. C-180189, 2019-Ohio-2025, ¶ 18. They are highly favored by the law as an efficient means to resolve litigation. *Id.*

**{¶17}** Settlement agreements present issues of contract law. *Turoczy Bonding Co. v. Mitchell*, 2018-Ohio-3173, 118 N.E.3d 439, ¶ 16 (8th Dist.). Accordingly, to be enforceable a settlement agreement must include "an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976); *see Kinnett* at ¶ 28. A meeting of the minds regarding the essential terms of the agreement is also necessary. *Kostelnik* at ¶ 16; *Kinnett* at ¶ 28.

**{¶18}** While it is preferable that a settlement agreement be put in writing, "an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract." *Kostelnik* at ¶ 15. The terms of an oral agreement will be

determined based on the parties' "words, deeds, acts, and silence." *Id.*, quoting *Rutledge v. Hoffman*, 81 Ohio App. 85, 75 N.E.2d 608 (12th Dist.1947), paragraph one of the syllabus.

{¶19} The standard of review applicable to a trial court's ruling on a motion to enforce a settlement agreement depends on the issue presented for review on appeal. *Kinnett*, 1st Dist. Hamilton No. C-180189, 2019-Ohio-2025, at ¶ 19. A de novo standard of review will be applied to questions of law, including whether the parties have entered into an enforceable agreement. *Id.* But if "the question is a factual one, such as whether an offer and acceptance has been made, a reviewing court will not overturn the trial court's finding if there was sufficient evidence in the record to support the finding." *Id.*

### A. Reduction of the Agreement to Writing

{¶20} The unit owners first contend that the trial court erred in granting the motion to enforce the settlement agreement because the parties had an intent to reduce the agreement to writing and failed to do so.

{¶21} The Villas and the Board, however, contend that memorializing the agreement in writing was not a material term of the parties' agreement and that the parties did not intend for the settlement agreement to only be enforceable upon the execution of a signed writing.

{¶22} "[W]here all the substantial terms of a contract have been agreed on and there is nothing left for future settlement, the fact alone that it was the understanding that the contract should be formally drawn up and put in writing does not leave the transaction incomplete and without binding force, *in the absence of a positive agreement that it should not be binding until so reduced to writing and formally*

*executed.*" (Emphasis sic.) *Turoczy Bonding,* 2018-Ohio-3173, 118 N.E.3d 439, at ¶ 22, quoting *Charvat v. Oasis Mtge., Inc.*, 10th Dist. Franklin No. 02AP-1090, 2003-Ohio-2879, ¶ 13, quoting 12 American Jurisprudence, Contracts, Section 25, at 522; *see PNC Mtge. v. Guenther*, 2d Dist. Montgomery No. 25385, 2013-Ohio-3044, ¶ 15. In cases where the parties intended that a contract would not be formed until the agreement was formally reduced to writing and signed, a settlement agreement will not be enforceable absent such a document. *PNC Mtge.* at ¶ 15.

{¶23} *Padula v. Wagner*, 2015-Ohio-2374, 37 N.E.3d 799 (9th Dist.), and *Turoczy Bonding* are instructive as we determine whether the parties in this case intended for the settlement agreement to be contingent upon the execution of a formal, signed writing. In *Padula*, the plaintiff filed a lawsuit against the defendant asserting various claims related to the defendant's termination of plaintiff's employment, including a breach-of-contract claim. *Id.* at ¶ 2-3. On appeal, plaintiff argued that the trial court erred in dismissing his claim for breach of contract. He alleged that the terms of his employment with defendant were set forth in three documents, including a document referred to as a "term sheet" that he alleged constituted a binding contract. *Id.* at ¶ 14. After examining the language of the term sheet, the Ninth District rejected plaintiff's claim that the term sheet was a binding contract because the document stated multiple times that the parties intended to subsequently negotiate and finalize a formal, binding contract extraneous to the term sheet. *Id.* at ¶ 16-19. It held that "[a]s a general rule, agreements in principle and preliminary negotiations that refer to subsequent, formal agreements are not binding." *Id.* at ¶ 18.

{¶24} The Eighth District reached the opposite conclusion with respect to whether a binding agreement had been reached by the parties in *Turoczy Bonding*,

2018-Ohio-3173, 118 N.E.3d 439. Turoczy was a registered bail bonds company that sued Mitchell, an independently contracted bail bond agent, for multiple causes of action including breach of contract. Mitchell subsequently asserted counterclaims against Turoczy. *Id.* at ¶ 3, 5 and 6. During the litigation, counsel for both parties discussed a potential settlement agreement through a series of emails. Approximately two weeks after agreeing in an email to draft a release of all claims, counsel for Mitchell emailed opposing counsel and stated that Mitchell had changed his mind and no longer wished to enter into a settlement agreement. *Id.* at ¶ 7-8.

**{¶25}** Turoczy filed a motion to enforce the settlement agreement, which the trial court granted. *Id.* at ¶ 10 and 12. Mitchell appealed, arguing that the settlement agreement was not enforceable because the parties had contemplated setting forth the terms of their agreement in a signed, written document. *Id.* at ¶ 20. The Eighth District affirmed the trial court's grant of the motion to enforce. It held that despite the fact that the settlement offer contemplated a future memorialized agreement, "the email communications reflect a definite offer and acceptance, bargained for consideration, and the parties' clear understanding of the settlement terms" and "did not expressly state that the agreement would not become binding until it was formally executed." *Id.* at ¶ 23.

**{¶26}** The facts of the case at bar are much more similar to those in *Turoczy Bonding* than those in *Padula.* Unlike the document involved in *Padula*, the settlement agreement between the unit owners and the Board and the Villas did not contain any provision stating that the agreement was conditional upon the execution of a written and signed contract. Rather, as in *Turoczy Bonding*, counsel for both parties exchanged a series of emails negotiating the wording of the settlement

agreement, and then one party—in this case, the unit owners—refused to sign the settlement agreement. The email communications between counsel reflected a definite offer and acceptance of all terms, including the defense-and-indemnification provision, and bargained-for consideration. None of the email communications contained language making a final settlement contingent on execution of a written document.

{¶27} Further indicative that the parties did not intend for the settlement agreement to be binding only upon the execution of a signed writing is that counsel for both parties reported to the trial court that a settlement had been reached before the settlement document was drafted.

{¶28} On this record, we hold that while the parties intended to memorialize their agreement in writing, they did not intend for the binding nature of the agreement to be contingent upon the execution of a signed writing. The trial court did not err in granting the motion to enforce the agreement in the absence of a writing signed by both parties.

## B. Meeting of the Minds

{¶29} The unit owners further argue that the trial court erred in granting the motion to enforce the settlement agreement because the parties never reached a meeting of the minds as to all of the agreement's essential terms. We are not persuaded.

{¶30} A meeting of the minds occurs where the parties have "mutually assent[ed] to the substance of the exchange." *Turoczy Bonding*, 2018-Ohio-3173, 118 N.E.3d 439, at ¶ 18. The settlement agreement in this case contains all material terms of the parties' agreement, including the Board's agreement to hold meetings three

13

times a year, the length of the meetings, and "atmosphere guidelines" to govern the meetings. The email exchange between counsel establishes that both parties mutually assented to all of these terms.

{¶31} The only provision in the settlement agreement that potentially remained in dispute was the defense-and-indemnification provision. As set forth above, the unit owners initially objected to the defense-and-indemnification provision. But the emails between counsel establish that after speaking in a phone call, the issue was resolved. The unit owners' counsel emailed counsel for the Villas and the Board to verify that their suggested language was added to this provision. Counsel for the Villas and the Board responded affirmatively, confirming the added language and shortly thereafter sent an updated agreement and dismissal.[1]

{¶32} The parties dispute whether the defense-and-indemnification provision is a material term of the settlement agreement. Regardless, the record establishes that not only the material terms, but all provisions in the settlement agreement, including the defense-and-indemnification provision, were agreed to by the parties. We accordingly hold that the trial court did not err in granting the motion to enforce the settlement agreement. The unit owners' assignment of error is overruled.

### III. Conclusion

{¶33} Because the parties did not intend for the settlement agreement to only be binding upon the execution of a signed writing, and because the parties reached a

---

[1] The unit owners argued that there was no meeting of the minds because they themselves did not participate in the settlement negotiations. However, they were represented by counsel who properly negotiated on their behalf. *See Wilson v. Pride*, 8th Dist. Cuyahoga No. 107793, 2019-Ohio-3513, ¶ 34 ("when a client authorizes his or her attorney to negotiate a settlement and the attorney negotiates a settlement within the scope of that authority, the client is bound by it"); *Bromley v. Seme*, 2013-Ohio-4751, 3 N.E.3d 1254, ¶ 25 (11th Dist.) (holding that, in reaching a settlement agreement, a party may be bound by the conduct of her or his attorney).

meeting of the minds as to all essential terms of the agreement, the trial court's judgment granting the motion to enforce the settlement agreement is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.