# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ESTATE OF ROBERT D. HODORY, DECEASED, | : | APPEAL NO.   C-240545 |
| | | TRIAL NO.   A-0509619 |
| Plaintiff-Appellant/Cross-Appellee, | : | |
| | : | |
| vs. | : | *JUDGMENT ENTRY* |
| | | |
| DUKE REALTY CORPORATION, | : | |
| | | |
| DUKE REALTY LIMITED PARTNERSHIP, | : | |
| | : | |
| KENWOOD OFFICE DEVELOPERS LIMITED PARTNERSHIP, | : | |
| | : | |
| and | : | |
| | | |
| KENWOOD OFFICE ASSOCIATES, | : | |
| | | |
| Defendants-Appellees/Cross-Appellants. | : | |
| | : | |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed to plaintiff-appellant/cross-appellee.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 11/7/2025 per order of the court.**

**OHIO FIRST DISTRICT COURT OF APPEALS**

By:_____
      **Administrative Judge**

[Cite as *Estate of Hodory v. Duke Realty Corp.*, 2025-Ohio-5068.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ESTATE OF ROBERT D. HODORY, DECEASED, | : | APPEAL NO. C-240545<br>TRIAL NO. A-0509619 |
| | : | |
|     Plaintiff-Appellant/Cross-Appellee, | : | |
| vs. | : | *O P I N I O N* |
| DUKE REALTY CORPORATION, | : | |
| DUKE REALTY LIMITED PARTNERSHIP, | : | |
| | : | |
| KENWOOD OFFICE DEVELOPERS LIMITED PARTNERSHIP, | : | |
|   and | : | |
| KENWOOD OFFICE ASSOCIATES, | : | |
|     Defendants-Appellees/Cross-Appellants. | : | |
| | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: November 7, 2025

*Finney Law Firm, LLC, Julie M. Gugino* and *Christopher P. Finney*, for Plaintiff-Appellant/Cross-Appellee,

*Keating Muething & Klekamp, LLP, Daniel E. Izenson* and *Bryce J. Yoder*, for Defendants-Appellees/Cross-Appellants.

**MOORE, Judge.**

## *I. Introduction*

This 'suit has, in course of time, become so complicated, that . . . no two . . . lawyers can talk about it for five minutes, without coming to a total disagreement as to all the premises. Innumerable children have been born into the cause: innumerable young people have married into it;' and, sadly, the original parties 'have died out of it.' A 'long procession of [judges] has come in and gone out' during that time, and still the suit 'drags its weary length before the Court.' Those words were not written about this case, see C. Dickens, Bleak House, in 1 Works of Charles Dickens 4-5 (1891), but they could have been.

*Stern v. Marshall*, 564 U.S. 462, 468 (2011).

{¶1}    In 2005, George W. Bush was president of the United States, Kanye West's song *Gold Digger* topped the Billboard charts, and something called YouTube was unleashed upon the world. Also in 2005, the litigation underlying this appeal began. And, now, approximately two decades later, we hope to bring it to an end.

{¶2}    The Estate of Robert D. Hodory, as plaintiff-appellant and cross-appellee ("the Estate"), has been engaged in litigation with defendants-appellees and cross-appellants Duke Realty Corporation, Duke Realty Limited Partnership, Kenwood Office Developers Limited Partnership, and Kenwood Office Associates (collectively, "Duke") for roughly 20 years. In this litigation, the parties have attempted to settle twice, and now both settlement attempts are the subject of this appeal.

{¶3}    The Estate appeals the judgment of the Hamilton County Court of Common Pleas after the court found the parties' 2019 settlement agreement

4

enforceable. Duke cross-appeals, challenging the court's conclusion that the 2009 settlement agreement was unenforceable.

{¶4} After reviewing the record below, which included a collection of emails between the parties discussing settlement as well as multiple transcripts from both evidentiary hearings and a settlement conference, we affirm the judgment of the trial court in part, reverse it in part, and remand the cause for further proceedings consistent with this opinion.

## II. Factual and Procedural History

{¶5} The genesis of this appeal goes back even further than 2005 and can, in fact, be traced back to 1986. It was in 1986 that Robert D. Hodory and a co-investor were trustees, grantors, and beneficiaries of H&R Properties Trust. H&R Properties Trust and Duke entered into a joint venture agreement to form Kenwood Office Associates ("KOA"), a firm with the purpose of purchasing and developing commercial real estate in Cincinnati.

{¶6} Material to this appeal, KOA purchased two properties, an office park called Kenwood Commons, and another property identified by the parties as "the Sibcy Property," a landlocked vacant acre immediately adjacent to Kenwood Commons. Both properties border the same side of Montgomery Road.

{¶7} After the co-investor's interest was bought out, Robert Hodory and Duke transferred interests between one another. This resulted in Duke owning 75 percent of KOA, and a 25 percent interest in the Sibcy property, and Robert Hodory owning all remaining interests.

{¶8} In 1994, Robert Hodory died. In 2005, his widow, Mrs. Hodory, as administrator of Robert Hodory's estate, filed a multi-claim complaint against Duke, alleging various claims, including breach of contract, breach of fiduciary duty,

conversion, and unjust enrichment.

*1. 2009 Settlement Agreement*

**{¶9}** In 2016, Duke moved to enforce a settlement agreement allegedly entered into in 2009. Duke alleged that in April 2009, the Estate emailed Duke confirming that the parties had reached a settlement agreement. Duke would pay $1.35 million in exchange for the full and final release of all pending claims, "[s]ubject to the negotiated language of the settlement agreement concerning all non-monetary issues[.]"

**{¶10}** The agreement identified 11 essential settlement terms. Over the next two years, the parties exchanged drafts of settlement documents. In an April 2010 email, the Estate responded to Duke's drafted settlement agreement by identifying four outstanding "critical" issues. Roughly a week later, Duke followed up, stating these issues were all resolved. In September 2010 the parties met to discuss the terms of the settlement agreement. The meeting ended with Marcie Hodory, Mrs. Hodory's daughter, requesting more time to review the settlement agreement. Following the meeting, the parties never reconvened. In November 2011, Mrs. Hodory died.

**{¶11}** In October 2018, the court held a multi-day evidentiary hearing on Duke's motion to enforce the 2009 agreement. After hearing from witnesses and reviewing documents related to Duke's motion, the court issued its decision. According to its published entry, the court found that, in addition to the 11 terms identified by the parties, there were two additional essential terms—one of which included the presence of an easement across Kenwood Commons to access the Sibcy Property.[1] The court's entry noted that at the time, there was no curb cut that would

---

[1] In addition to the issue of the easement, the other item concerned the effect of Duke's decision to

6

allow access to the Sibcy Property from Montgomery Road, and that the property was legally landlocked. The court noted that drafts and emails between the parties contained differing language regarding the presence of an easement, and that the parties never resolved whether an easement would be granted, who would pay for it if granted, and other material details related to the term. Despite emails from the parties stating that all pending critical issues had been resolved, the court concluded that the parties' failure to resolve the easement issue indicated that there was never a "meeting of the minds" as to all essential terms. The court, therefore, denied Duke's motion to enforce the settlement agreement.

### 2. 2019 Settlement Agreement

**{¶12}** In November 2019, Duke informed the Estate of a third-party offer to purchase Kenwood Commons for $6.62 million. The parties' joint venture agreement provided that in the instance that a third party offered to purchase the property, either of the two parties may match the offer and buy the property outright. Neither party exercised the purchase option.

**{¶13}** In December 2019, the parties again attempted to settle, this time at an in-court settlement conference. After roughly seven hours, the parties came to an agreement and read into the record the terms. The parties announced that the agreement included a "total compensation [award] of $2.35 million" to the Estate, and that the Estate conveyed all interest in KOA to Duke, and that the Estate would execute a quit claim deed of its interest in both the Sibcy Property and Kenwood Commons to Duke. The parties also addressed an immediate cash payment amount:

cease partnership distributions but to continue providing the K-1 tax forms to the Estate. The court's entry acknowledges that the April and September 2010 emails discussed tax issues, and those discussions may have encompassed and settled the item, and went on to state that all essential terms were resolved except for the easement.

MARCIE HODORY: Can you state how much that distribution amount is, so that - -

MR. MESSER (counsel for the Estate): I did. It's $2.35 million total.

MS. DEE (Duke's General Counsel): And of that, we will distribute $150,000 to the Estate immediately.

MR. MESSER: Okay.

MARCIE HODORY: Yes.

**{¶14}** The parties also addressed the subject of tax liability:

MR. MESSER: Each party will pay whatever taxes are deemed due on the payment made pursuant to this agreement. Next, Duke will cooperate with the Estate of Robert Hodory to minimize any tax liability of the Estate.

. . .

MR. IZENSON (counsel for Duke): And a dismissal entry will include all claims which have been raised or could have been raised in the lawsuit.

MR. MESSER: Yes; and I think that's going to be covered by the mutual release we're going to talk about anyway. So, there's going to be a total walkaway between the parties.

MR. IZENSON: Indeed.

. . .

MR. MESSER: Duke will provide any KOA tax returns or other information requested by the Hodorys necessary for their own tax filings - - and I said "the Hodorys," I meant "The Estate" - - so that they can complete their returns.

8

MARCIE HODORY: Including depreciation schedules and any other information needed to do that.

MS. DEE: To the extent available.

MR. ANTHONY (Duke's Chief Investment Officer): To the extent available.

MR. MESSER: To the extent available, of course.

{¶15} As the conference was coming to a close, Marcie stated that she was agreeing because she was "under duress."

COURT: Ms. Hodory, is this your agreement?

MARCIE HODORY: Yes.

COURT: Now, I know that we've been negotiating all day, but even in the last 45 minutes, or so, you had some concerns, and we are under the gun, literally, to get out of here quickly. But I do not want you to feel that you're being pressured into this, because if you agree to this you can't change your mind. You understand that?

MARCIE HODORY: Yes, but I'm agreeing under duress. I have no choice.

COURT: You're under duress, then we're not going to have an agreement.

. . .

MR. MESSER: Marcie, if you say you're under duress, you've just wasted this whole thing. So you've had advice of counsel, you've had plenty of time to think about this, so I think you either have to say you agree with this or you don't agree with it.

MARCIE HODORY: I said I agree.

{¶16}  After some discussion between Marcie and her attorney, Marcie stated that no person was pressuring her to agree, and that she wanted to settle. The court then asked if Marcie understood that by agreeing, she was voluntarily entering into a settlement agreement and that she could not come back in a week, month, or year and claim that she was pressured into the agreement and that she was under duress. Marcie assented, and the conference concluded.

{¶17}  In March 2020, the Estate moved the court to set aside the 2019 settlement agreement. In its briefing, the Estate argued the settlement was fraudulently induced, that Marcie's agreement was a product of duress, and that too many essential terms were unresolved.

{¶18}  In December 2023, while the motion was still pending, the trial court journalized the terms of the 2019 settlement agreement. The paragraphs concerning an immediate cash payment stated the following:

1. Defendants shall pay the Estate of Robert D. Hodory the total sum of $2,350,000.00.

6. Except for the payment described in paragraph 1, Defendants will have no obligation to make further payments under the partnership agreement. As part of the payment in paragraph 1, an immediate payment to The Estate of Robert D. Hodory in the amount of $150,000 will be made.

7. Two checks previously written but not cashed will be voided.

The paragraphs concerning the taxation included:

8. Each party will bear their own tax consequences on the payment described in paragraph 1 with Defendants agreeing to cooperate with the Estate of Robert D. Hodory to minimize tax liabilities. Defendants

10

agree to allocate payments as requested by Plaintiff for tax purposes, as permitted by law, including REIT laws.

{¶19} In early 2024, the Estate again moved for an order from the court setting aside the settlement agreement. This time, the Estate requested, pursuant to Civ.R. 38, an evidentiary hearing before a jury.

{¶20} In February 2024, the court denied the Estate's motion, finding that the settlement agreement was valid and enforceable. The court stated that it was not "objectively reasonable" to claim the settlement was a result of fraud or that it was entered into under duress. However, the court recognized two lingering ambiguities in the parties' settlement agreement, namely whether the $150,000 immediate payment was included within the $2.35 million settlement award or whether the payment was to compensate the Estate for two previously discarded checks that were never cashed; and what were Duke's obligations to minimize the Estate's tax liability.

{¶21} In August 2024, the court held a two-day evidentiary hearing to clarify the ambiguities. The court heard testimony from Duke's Vice President and General Counsel that the $150,000 was a component of the $2.35 million settlement award. In response, Marcie testified that her email correspondence with Duke's counsel conspicuously stated that the $150,000 was a distribution from KOA and was therefore not a component of the settlement award. Duke also introduced an email from Marcie explaining that the distribution was a component of the settlement award. On the issue of minimizing the Estate's tax exposure, the court heard testimony from Duke's General Counsel that Duke would use accelerated bonus depreciation to offset some of the Estate's tax liability, but that it was never contemplated by the parties that Duke would amend prior tax returns.

{¶22} Soon thereafter, the court announced its decision. First, the court

11

concluded that the $150,000 payment was separate from the $2.35 million settlement award, noting that it was a separate item on the settlement recital and that prior distribution checks had been voided. The court also concluded that the payment was a final partnership distribution and was therefore separate from the $2.35 million settlement award. As to the issue of tax liability, the court determined Duke had no ongoing obligation to mitigate the Estate's tax liability. Based on a review of the settlement-conference transcript, the court concluded that there was no intention by Duke to assume any financial liability as it relates to the Estate's tax liability. The court also noted that the parties at the settlement conference agreed to "a total walkaway between the parties" on "all claims which have been raised or could have been raised in the lawsuit."

{¶23} Subsequently, the Estate filed its appeal, and Duke followed suit, filing its notice of cross-appeal.

### III. Analysis

{¶24} On appeal, the Estate and Duke raise dueling assignments of error. The Estate's three assignments of error allege that the court erred when it failed to set aside the 2019 settlement agreement, that the court's interpretation of Duke's responsibility to minimize the Estate's tax liability was erroneous, and that the court erred in denying the Estate's motion for reconsideration. Duke's two cross-assignments of error allege that the court erred in denying Duke's motion to enforce the 2009 settlement agreement, and that the court erred when it interpreted the 2019 settlement agreement as requiring Duke to make a $150,000 payment in addition to the $2.35 million settlement award. Of all arguments raised, only Duke's second cross-assignment of error is meritorious.

### A. Setting Aside the 2019 Settlement Agreement

**{¶25}** In its first assignment of error, the Estate contends that the trial court erred by denying the Estate's motion to set aside the agreement.

**{¶26}** Our review of the court's motion to enforce a settlement agreement varies based upon the issue presented. *Swan v. Villas Condominium Unit Owners' Assn.*, 2024-Ohio-2313, ¶ 19 (1st Dist.). We review whether parties entered into an enforceable contract de novo. *Id.* However, factual questions, such as the presence of an offer and acceptance turns on whether there was sufficient evidence to support the court's finding. *Id.*; *see Santomauro v. Sums Property Mgt., LLC*, 2019-Ohio-4335, ¶ 25 (9th Dist.). The presence of fraud, or duress, is a question of fact. *Carpenter v. Scherer-Mountain Ins. Agency*, 135 Ohio App.3d 316, 328 (4th Dist. 1999), citing *Kungle v. Equitable Gen. Ins. Co.*, 27 Ohio App.3d 203, 206 (9th Dist. 1985).

**{¶27}** To be enforceable, a settlement agreement, like other contracts, requires a meeting of the minds on the essential terms. *Rayess v. Educational Comm. for Foreign Med. Graduates*, 2012-Ohio-5676, ¶ 19. While a written settlement agreement is the preferred form, a settlement agreement may also be orally entered into so long as there is sufficient particularity. *Swan* at ¶ 18, citing *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 15. Therefore, it is critical that the parties understand the terms of the settlement agreement.

**{¶28}** Where parties legitimately dispute the existence of a settlement agreement, a trial court must first conduct an evidentiary hearing. *Rulli v. Fan Co.*, 79 Ohio St.3d 374 (1997), paragraph one of the syllabus; *see Ogle v. Trustee of Charles R. Ogle Irrevocable Trust*, 2024-Ohio-2280, ¶ 53-54 (5th Dist.); *M.C. v. Choudhry*, 2022-Ohio-915, ¶ 15 (9th Dist.) (holding in the absence of a legitimate dispute concerning the terms or facts of a settlement agreement, the trial court did not abuse

its discretion in not holding an evidentiary hearing); *see also Zele v. Ohio Bell Tel. Co.*, 2023-Ohio-2875, ¶ 41 (8th Dist.); *Maury v. Maury*, 2008-Ohio-3326, ¶ 47 (7th Dist.). A court's failure to hold an evidentiary hearing may be considered harmless error "when a subsequent hearing was held, prior to the entry of final judgment, addressing the allegedly contested issues." *LEH Properties v. Pheasant Run Assn.*, 2011-Ohio-516, ¶ 10 (9th Dist.).

**{¶29}** Once it has been concluded that a valid settlement agreement exists, such an agreement "can only be set aside for the same reasons that any other contract could be rescinded, such as fraud, duress, or undue influence." *Cochenour v. Cochenour*, 2014-Ohio-3128, ¶ 28 (4th Dist.), citing *Barstow v. O.U. Real Estate, III, Inc.*, 2002-Ohio-4989, ¶ 37 (4th Dist.).

**{¶30}** Turning to the Estate's arguments, we first consider the allegation that Marcie, as representative of the Estate, entered into the contract under duress. The Estate insists that it is evident from the transcript of the settlement conference that Marcie was under duress. We disagree.

**{¶31}** To establish an agreement was a product of duress, a plaintiff must show that they involuntarily accepted the defendant's terms, that the circumstances permitted no alternative, and that the circumstances were a result of the defendant's coercive conduct, and not by the needs of the plaintiff. *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246 (1990), citing *Urban Plumbing & Heating Co. v. United States*, 408 F.2d 382, 389-390 (U.S. Ct. of Cl. 1969). "The real and ultimate fact to be determined in every case is whether the party affected really had a choice; whether he had his freedom of exercising his will." *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 49, quoting *Tallmadge v. Robinson*, 158 Ohio St. 333, 340 (1952).

**{¶32}** From a review of the transcript of the settlement conference, the

settlement agreement was not a product of duress. The factual record reveals that despite Marcie's utterance, she spoke with her counsel, and it was surmised that she did not know the legal significance of the word. Her counsel reassessed her willingness to proceed, and multiple times after the utterance that she was "under duress," she insisted that she wanted to settle and that she was acting of her own volition. Despite being warned by the court that settling now would foreclose her opportunity to come back to the bargaining table in the future, Marcie agreed that she was entering into the settlement agreement voluntarily. Therefore, the court's conclusion that the 2019 settlement agreement was not a product of duress was supported by sufficient evidence.

{¶33} The Estate's fraudulent-inducement argument is similarly unpersuasive. "In order to prove fraud in the inducement, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to their detriment." *Dayton Children's Hosp. v. Garrett Day, LLC*, 2019-Ohio-4875, ¶ 103 (2d Dist.), citing *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502 (1998).

{¶34} The Estate's theory of fraud in the inducement is based on its claim that Duke put forth a superficial third-party offer to induce the Estate to settle at a lower value, only to reveal to Marcie moments after the close of the settlement conference that the offer was a "dead letter." However, this theory is unpersuasive. The court's entry noted that there had been years of thorough negotiating between the parties, and that the third-party offer was shared with the Estate roughly three weeks prior to the settlement conference. At the evidentiary hearing, the court heard Marcie's testimony that, at the time of conference, she believed the third-party offer was too low, and that she knew the $2.35 million settlement award was not derived from the $6.62 million

15

third-party offer, but instead from a $7 million property appraisal.

**{¶35}** In weighing the parties' competing recitation of events, the court concluded that the Estate's argument that they were fraudulently induced was "not objectively reasonable." We agree and therefore hold the trial court's determination that the 2019 agreement was not a result of a fraudulent inducement was supported by sufficient evidence.

**{¶36}** Finally, the Estate's demand for an evidentiary hearing is also misplaced. The Estate insists that pursuant to the Ohio Supreme Court's holding in *Rulli*, 79 Ohio St.3d 374, it was entitled to an evidentiary hearing because it disputed the validity of the settlement agreement. However, the Estate's argument is distinguishable from the issue present in *Rulli* because the Estate failed to raise a legitimate dispute. While the Estate takes issue with the existence of the settlement agreement, its arguments fail to legitimately bring into dispute the existence of a binding settlement agreement. In borrowing the language of the trial court, an argument that is not "objectively reasonable" cannot serve as a legitimate basis to challenge the validity of a settlement agreement. Therefore, because the Estate has failed to raise a legitimate dispute as to the validity of the settlement agreement, it was not entitled to a *Rulli* evidentiary hearing.

**{¶37}** Accordingly, the Estate's first assignment of error is overruled.

### B. *Error in Interpreting Duke's Obligation to Minimize the Estate's Tax Liability*

**{¶38}** In its second assignment of error, the Estate alleges that the court misinterpreted the term in the parties' 2019 settlement agreement that required Duke to cooperate with the Estate to minimize the Estate's tax liability.

**{¶39}** Interpreting the terms of an unambiguous contract presents issues of

law that we review de novo. *Texlo*, *LLC*, *v. Gator Hillcrest Partners*, 2024-Ohio-5686, ¶ 12 (1st Dist.), citing *Qiming He v. Half Price Heating & Air*, 2021-Ohio-1599, ¶ 6 (1st Dist.). However, when the terms of a contract are ambiguous, "the meaning of the words in the contract becomes a question of fact, and the trial court's interpretation will not be overturned on appeal absent a showing that the court abused its discretion." *Murphy Elevator Co. v. 11320 Chest LLC*, 2018-Ohio-1362, ¶ 17 (1st Dist.), citing *Kelley Dewatering and Constr. Co. v. R.E. Holland Excavating, Inc.*, 2003-Ohio-5670, ¶ 21. A court abuses its discretion where its conduct exceeds a "mere error of judgment," and it conducts itself in an "arbitrary, unreasonable or unconscionable" manner. *Gipson v. Mercy Health Sys. of S.W. Ohio.*, 2025-Ohio-2208, ¶ 12 (1st Dist.).

{**¶40**}   The test for whether a term is ambiguous is whether the term is subject to more than one reasonable interpretation. *DATFT LLC v. AM Reflections Cleaning Servs. LLC*, 2023-Ohio-1348, ¶ 14 (1st Dist.). "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992), quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978).

{**¶41**}   Here, the tax term was ambiguous. The court's journalization of the terms of the contract identified that each party would bear their own tax consequences, but that Duke would agree to cooperate with the Estate to minimize tax liabilities. When plainly reading the court's journalized terms of the settlement agreement, the extent of Duke's obligations under the term, "[Duke agrees] to cooperate with the Estate to minimize tax liabilities," lacks certainty and could be interpreted in several reasonable ways. It is not readily apparent what constitutes satisfactory cooperation. The court appropriately then looked to parol evidence and considered the transcript

of the parties' settlement conference as well as testimony and exhibits introduced at the evidentiary hearing. The court noted that the transcript of the settlement conference reflects that the parties identified that Duke would provide information to the Estate upon request, including depreciation schedules to the extent available. Nowhere in the transcript does either party mention their intention to amend prior tax returns. In fact, Duke's General Counsel, at the evidentiary hearing, expressly stated that Duke had no intention of amending its previously filed tax returns. Upon reviewing the court's resolution of the tax ambiguity, we cannot say the court abused its discretion. Accordingly, the Estate's second assignment of error is overruled.

### C. Mutual Mistake

{¶42} The Estate's third assignment of error contends the court erred when it denied the Estate's motion to reconsider whether the 2019 settlement agreement was enforceable. Building off of its second assignment of error, the Estate insists that there was a mutual mistake between the parties regarding the intended effect and meaning of the term "Duke will cooperate." The motion goes on to state that there was never a meeting of the minds between the parties. The Estate also argues that it was entitled to an evidentiary hearing in the presence of a jury under Civ.R. 38.

{¶43} First, the Estate is not entitled to an evidentiary hearing before a jury. The Estate's motion for reconsideration asked that the court set aside the parties' settlement agreement. Ohio courts have long held that a plaintiff is not entitled to a jury trial when their claims solely seek equitable relief. *Porter v. Hammond N. Condominium Assn.*, 2025-Ohio-2210, ¶ 49 (1st Dist.). Contract recission is a form of equitable relief. *Feichtner v. Zicka Homes, Inc.*, 1983 Ohio App. LEXIS 14225, *4 (1st Dist. Mar. 23, 1983). Therefore, the court did not improperly deny the Estate's request for a jury trial.

**{¶44}** Similar to its second assignment of error, the Estate's arguments that the contract was unenforceable are unpersuasive. When faced with a claim of mutual mistake on appeal, we review whether the proponent of reformation has demonstrated by clear and convincing evidence that the parties were mutually mistaken when agreeing to contract. *Madeira Crossing Ltd. v. Milgo Madeira Properties, Ltd.*, 2014-Ohio-4179, ¶ 25 (1st Dist.), citing *Wagner v. Natl. Fire Ins. Co.*, 132 Ohio St. 405, 412 (1937), citing *Stewart v. Gordon*, 60 Ohio St. 170, 174 (1899). A mutual mistake of fact requires that both parties at the time the contract was entered into made a mistake "as to a basic assumption on which the contract was made" and that the mistake had a material effect on the parties' performance obligations. *Marchbanks v. Ice House Ventures*, 2023-Ohio-1866, ¶ 15, citing *Reilley v. Richards*, 69 Ohio St.3d 352, 354 (1994).

**{¶45}** We review whether the parties entered into an enforceable contract de novo. *Swan*, 2024-Ohio-2313, at ¶ 19 (1st Dist.). For the parties to have entered into an enforceable contract, they need to have had a meeting of the minds on all essential terms of the agreement. *Id.* at ¶ 17. "There may not be a meeting of the minds if contract provisions are ambiguous, and the ambiguity cannot be resolved." *Kar v. TN Dental Mgt., LLC*, 2024-Ohio-6075, ¶ 38 (2d Dist.).

**{¶46}** Here, the court appropriately determined that the Estate failed to meet its burden. While the Estate insisted that there was a "stark dichotomy" between the parties' interpretation of the tax term, the court concluded that the Estate's mistake was unilateral. While the extent of Duke's cooperation was unclear, the court's evidentiary hearing and reliance upon parol evidence resolved the ambiguity. Ultimately, the court concluded that Duke's interpretation of the tax term was correct. Because Duke's interpretation was correct, there was no mutual mistake between the

parties as to the definition of the tax term. At best the Estate was unilaterally mistaken as to the term, however, because the Estate has failed to argue for recission on this basis, we decline to do so on its behalf. *State v. Brunson*, 2022-Ohio-4299, ¶ 24, citing *State v. Quarterman*, 2014-Ohio-4034, ¶ 19 ("This court is not obligated to formulate legal arguments on behalf of the parties, because acting as an appellate court, we preside as arbiters of the legal questions presented and *argued by the parties*.")(Emphasis added.).

**{¶47}** For these reasons, the Estate's third assignment of error is overruled.

### D. *Enforceability of the 2009 Settlement Agreement*

**{¶48}** In its first cross-assignment of error, Duke argues that the court erred when it failed to find the 2009 settlement agreement enforceable. Specifically, Duke argues the court erred when it inferred that the resolution of an easement across Kenwood Commons to access the Sibcy Property was an essential term and now argues that this was a nonessential term of the parties' settlement agreement that would not have impeded the parties' 2009 settlement agreement from being enforceable.

**{¶49}** Whether parties to a contract had a meeting of the minds on all essential terms of the agreement so that a contract is enforceable is a question of law we review de novo. *Swan*, 2024-Ohio-2313, at ¶ 17, 19 (1st Dist.). But if we are faced with a factual review, such as whether an offer and acceptance was made, then an appellate court will not overturn the trial court's finding so long as there was sufficient evidence in the record to support the finding. *Kinnett v. Corp. Document Solutions, Inc.*, 2019-Ohio-2025, ¶ 19 (1st Dist.). The essential terms of a contract generally include "the subject matter, the identity of the parties bound, consideration, price, and quantity." *North Side Bank & Trust Co. v. Trinity Aviation LLC*, 2020-Ohio-1470, ¶ 15 (1st Dist.).

**{¶50}** As all parties agree, the issue of the easement was never resolved by the

parties. The court's entry noted that the issue was outstanding, and whether the issue of the easement rose to an essential term turned on when the issue was asserted by the Estate. Below the court considered a number of emails, as well as testimony concerning offers and draft agreements that were met with counteroffers and redlining, and concluded that the parties never squarely resolved the issue on the placement of an easement. The emails on September 4, 2009, December 13, 2009, January 4, 2010, April 1, 2010, and September 29, 2010, are evidence that the issue of an easement remained open.

{¶51} As captured in the court's well-reasoned opinion below, the location of the easement was appropriately classified as an essential term, as the Estate's ability to access the Sibcy Property—an otherwise landlocked parcel—was inherently part of the subject matter of the agreement. Therefore, the parties failed to have a meeting of the minds as to all essential terms and thus failed to enter into an enforceable contract. Accordingly, the court did not err in concluding that the 2009 agreement was unenforceable, and we thus overrule Duke's first cross-assignment of error.

### E. Interpreting the $150,000 Payment Term

{¶52} Duke's second assignment of error takes issue with the court's interpretation of one of the terms of the 2019 settlement agreement. Duke insists that the court erred in classifying the $150,000 immediate payment as separate from the total $2.35 million settlement award.

{¶53} Although we review de novo whether a clause or a term in a contract is ambiguous, we review a court's interpretation of ambiguous terms for an abuse of discretion. *Murphy Elevator Co.*, 2018-Ohio-1362, at ¶ 17 (1st Dist.). A contract is ambiguous where its terms either cannot be understood by a clear reading of the whole contract, or if the contract could reasonably be subjected to multiple interpretations.

*Id*. When a contract is unambiguous and clear on its face, we need not look past the plain language of the contract to determine the responsibilities of the parties. *World Harvest Church v. Grange Mut. Cas. Co.*, 2016-Ohio-2913, ¶ 36.

**{¶54}** Here, the parties' oral settlement agreement was not ambiguous. The court's journalized terms provided, "Defendants shall pay the Estate of Robert D. Hodory the total sum of $2,350,000.00" and "As part of the payment in paragraph 1, an immediate payment to The Estate of Robert D. Hodory in the amount of $150,000 will be made." The court also directed that two previous checks were voided. Upon a plain reading of the parties' settlement agreement, the $150,000 was a part of the $2.35 million payment. Therefore, the court erred as a matter of law when it concluded the payment term of the 2019 settlement agreement was ambiguous.

**{¶55}** Even if the term was ambiguous, the court's interpretation of the payment term was unreasonable. The parol evidence shows that the $150,000 was a component of the total payment. As reflected in the settlement-conference transcript, the parties agreed that there would be "no further distributions other than what's included in the $2.35 million" and "of that, we will distribute $150,000 to the Estate immediately." Further, Marcie's own email with her siblings the day following the settlement conference recorded that the $150,000 payment was a part of the total award. In her email, Marcie stated,

> Duke's settlement number of $2.35 million is assuming a sale price of the Kenwood Commons that is equal to the appraisal value of $7 million (which purportedly translates into $1.6 million for the Estate's partnership interest in KOA), and not [the third party] purchase offer of $6.6 million. The rest of the settlement consists of $600,000 for damages and $150,000 for the distribution check (this is a replacement

check for the two prior uncashable checks that were wrongly made payable to the [Estate]).

**{¶56}** The court's interpretation of the agreement that the $150,000 payment was in addition to the total settlement award does not comport with the record. The journalized terms, the recorded discussion from the settlement conference, as well Marcie's email do not support the court's conclusion. Thus, the court's interpretation of the $150,000 payment being separate from and in addition to the $2.35 million total was unreasonable and therefore constituted an abuse of discretion. Accordingly, Duke's second cross-assignment of error is sustained.

## IV. Conclusion

**{¶57}** In sum, the parties' 2009 settlement agreement was unenforceable, while the 2019 settlement agreement was enforceable. The Estate has failed to demonstrate that the latter agreement was a product of duress, fraudulent inducement, or mutual mistake. While the court correctly recognized that the tax term was ambiguous, the court erred when it determined the payment term was ambiguous. The $150,000 payment was contemplated as a component of the total $2.35 million settlement award. Therefore, the trial court's judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion and the law.

Judgment affirmed in part, reversed in part, and cause remanded.

**ZAYAS, P.J.,** and **NESTOR, J.,** concur.